580 A.2d 295

COMMONWEALTH of Pennsylvania, Appellee,

v.

Lynn K. SNOKE, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 15, 1989.

Decided Aug. 24, 1990.

Frederick C. Timm, for appellant.

Henry S. Kenderdine, Dist. Atty., James J. Karl, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

NIX, Chief Justice.

Appellant, Lynn K. Snoke, was convicted by a jury of indecent assault, 18 Pa.C.S. § 3126, and corruption of a

minor, 18 Pa.C.S. § 6301, stemming from an incident involving his five-year-old daughter. The cause was appealed in the Superior Court which affirmed the judgment of sentence. After review, for the reasons that follow, we also affirm the judgment below.

The principal issue raised in this appeal is whether the trial judge committed error in refusing to instruct the jury specifically addressing the five-year-old victim's failure to disclose the alleged assault upon her by her father until approximately five months after the event. The premise of this contention is that the delay in disclosure was of such significance that it necessitated a specific instruction on the lack of a prompt complaint. A collateral issue raised is whether the trial judge also erred in permitting the cross-examination of a defense witness to go beyond the scope of the direct examination.

The pertinent facts of this case are as follows: In March of 1985, the victim, Melanie Snoke, then five years old, watched a film at school concerning child abuse. Present during the viewing of the film were the child's mother, Cindi Snoke, and the mother's boyfriend, William Leed.[1] The child became visibly upset during the film and confided in her mother that her father, Lynn Snoke, had "touched" her around the Halloween season of 1984. The child described an incident which occurred on a night her mother was working and she was left in the care of her father. She testified that during the night she and her father watched a "Snoopy" cartoon. She said her father had told her to come into his bedroom; once there, he told her to disrobe and he then proceeded to perform oral and vaginal intercourse. The victim also testified that her father rubbed his penis until he caused a "white cream" to discharge. Following the assault, she and her father took a bath together and he told her that this would be "their little secret" and not to tell her mother. Lynn Snoke was later

---

1. The film was shown at area elementary schools in order to better educate the children and parents as to the symptoms and effects of child abuse.

charged with indecent assault and the corruption of a minor.

At trial the Commonwealth produced the program manager of a local television station who testified that the station played the Peanuts cartoon, *"It's the Great Pumpkin, Charlie Brown,"* on October 26, 1984, which includes the character, Snoopy. The Commonwealth also produced Cindi Snoke's employer, who testified that Mrs. Snoke was working from 5:00 p.m. to 11:00 p.m. on the night of October 26, 1984. Finally, the Commonwealth presented the volunteer from Rape Aid and Prevention who played the film for the children at Clay Elementary School in March, 1985 in order to describe how the film explained to the children of the elementary school the difference between "good touching" and "bad touching". The film gave the children instructions on what to do if someone assaulted them.

The appellant presented the testimony of Doreen Pavone, an employee from The Lancaster County Children and Youth Agency who interviewed Melanie shortly after the film. The appellant asked the witness to read into the record the statement of Melanie as documented by the employee in a report, in an attempt to establish inconsistencies in the victim's testimony. On cross-examination the Commonwealth was permitted to question the employee about what recommendation she included in the report after the interview with Melanie. Pavone testified that as a result of her interview she was able to gather information that substantiated that there was sexual contact between the victim and her father. Defense counsel objected to this testimony on the basis that it was beyond the scope of direct examination and irrelevant. This objection was overruled.

The jury convicted the appellant on both charges. The appellant appealed to the Superior Court, which affirmed the trial court. We granted allocatur to address the question of whether the trial judge in this case was under an obligation to instruct the jury specifically with regard to the lack of a prompt complaint.

■ Under common law, the promptness of a complaint or the "hue and cry" was considered an element for a jury to consider when weighing the veracity of a complainant. *See, e.g., Commonwealth v. Allen,* 135 Pa. 483, 19 A. 957 (1890); *Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746 (1949); *see also,* IV Wigmore on Evidence § 1135. The theory is based on the principle that a victim of a violent assault would be expected to complain of the assault at the first safe opportunity. *Commonwealth v. Lane,* 521 Pa. 390, 555 A.2d 1246 (1989); *Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371 (1979); *Commonwealth v. Stohr,* 361 Pa.Super. 293, 522 A.2d 589 (1987); *Commonwealth v. Freeman,* 295 Pa.Super. 467, 441 A.2d 1327 (1982). This principle has been codified in our crimes code at 18 Pa.C.S. § 3105. Section 3105 states:

Prompt reporting to public authority is not required in a prosecution under this chapter: Provided, however, that nothing in this section shall be construed to prohibit a defendant from introducing evidence of the alleged victim's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.

It has been said that "hue and cry follow rape like smoke follows fire." *See Commonwealth v. Freeman,* 295 Pa.Super. at 475, 441 A.2d at 1131. The presumption follows that if a complaint is made promptly after the alleged offense, the victim has not had time to fabricate the story and the story is given more credibility. *See, e.g., Commonwealth v. Krick, supra.* Conversely, if a complaint is delayed substantially without any reasonable explanation, an inference can be drawn regarding the credibility of that complaint and against whether the incident in fact occurred.

In *Commonwealth v. Lane, supra,* this Court considered the proper implications of a delay in making a complaint with regard to credibility where the minor victim was violently assaulted by a neighbor. In that case the Court was faced with whether the trial judge properly permitted the Commonwealth to challenge a venireperson for cause because he stated that he would be unable to disregard the

time delay between the incident of sexual assault and the complaint. In holding that the trial judge had erred, this Court stated that the delay issue was a "legitimate factor to be considered in the trial of the case," and therefore "there was no basis for concluding that [the venireperson] was unqualified to serve as a juror." *Id.* 521 Pa. at 401, 555 A.2d 1252.

We stated in *Lane*, "[u]nquestionably, a prompt complaint is a factor which must be assessed with all of the other pertinent evidence bearing upon the question of the credibility of the complaining witness." *Id.*, 521 Pa. at 397, 555 A.2d 1250. We further stated, "[t]he lack of a prompt complaint by a victim of a crime, although not dispositive of the merits of the case, may justifiably produce a doubt as to whether the offense indeed occurred, or whether it was a recent fabrication by the complaining witness." *Id.*, 521 Pa. at 398, 555 A.2d 1250. *See also,* Note, Rape Reform Legislation and Evidentiary Concerns, 44 U.Pitt.L.Rev. 955 (1983). However, the Court in *Lane* recognized that consideration should be given to factors inherent in cases involving minor victims which may explain the delay without reflecting unfavorably on the minor witness' credibility.

> The untimely complaint might be made in order to protect the truly guilty party, as in the case of a child blaming an innocent party for the wrongdoing of a parent. It might be the act of revenge against the accused prompted by dislike or by an unrelated dispute between either the minor complainant and the accused or, possibly, between the family of the minor complainant and the accused. *It is also possible that the immaturity of the victim would cause the child not to appreciate the offensiveness of the encounter and the need for its prompt disclosure.* (Emphasis added.)

*Lane, supra,* 521 Pa. at 398, 555 A.2d 1250.

The appellant in the present case alleges that the trial judge erred by failing to instruct the jury as to the proper inference to be drawn from the five month delay in the complaint. The trial judge is required to instruct the

jury as to the applicable law of the case. *Commonwealth v. Ford–Bey,* 504 Pa. 284, 472 A.2d 1062 (1982); *Commonwealth v. Schaller,* 493 Pa. 426, 426 A.2d 1090 (1981); *see also, Brandimarti v. Caterpillar Tractor Co.,* 364 Pa.Super. 26, 527 A.2d 134 (1987). There is no requirement for the trial judge to instruct the jury as requested by either counsel if the issue is not in dispute or the law is not applicable to the case. *Commonwealth v. Yarris,* 519 Pa. 571, 549 A.2d 513 (1988); *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328 (1983).

 Questions of credibility must always be put before the jury as the fact finder and the judge must instruct the jury as to credibility considerations applicable to the case. *Commonwealth v. Smith,* 502 Pa. 600, 467 A.2d 1120 (1983); *Commonwealth v. Holmes,* 486 Pa. 415, 406 A.2d 510 (1979); *Commonwealth v. Hampton,* 462 Pa. 322, 341 A.2d 101 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 334 A.2d 255 (1975). As this Court stated in *Lane:*

The validity of our system of justice is dependent upon the integrity of our fact-finding process. The hallmark of that system is trial by jury. To achieve this goal, we are committed to provide a jury of one's peers and require that they be willing to decide the cause on the evidence presented following the instructions as to the law as provided by the court.

*Lane, supra,* 521 Pa. at 396, 555 A.2d 1248.

Specifically, where the actual occurrence of the assault is at issue in the case, the trial judge is required to charge the jury as to the relevance of a delay in disclosure and the significance of a prompt complaint. In such an assessment the witness' understanding of the nature of the conduct is critical. Where the victim did not comprehend the offensiveness of the contact at the time of its occurrence, the absence of an immediate complaint may not legitimately be used to question whether the conduct did in fact occur. *Commonwealth v. Lane, supra;* see, e.g., *Commonwealth v. Romanoff,* 258 Pa.Super. 452, 392 A.2d 881 (1978); *Com-*

*monwealth v. Hornberger,* 199 Pa.Super. 174, 184 A.2d 276 (1962).

■ The present case is distinguishable from *Lane.* In *Lane,* an eight-year-old victim was violently assaulted by a neighbor. The trial judge excused a juror for cause because of his inability to ignore the year long delay in reporting the incident. This Court held that the trial judge erred by excusing the juror. In the present case, a five year old was the victim of an assault by her father. After the assault, he told her this would be "their little secret." The child at such a tender age would have had no reason to question her father. The child victim revealed the incident five months later after viewing a film at her elementary school dealing with sexual assault. The film explained to the children the difference between "good touching" and "bad touching." The mother of the victim took the child to seek counseling at the Children and Youth Agency. After an interview with the child, a counselor stated in her report that the assault was substantiated and referred the matter to the police for a criminal complaint to be charged.

Where no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrong-doing, particularly where the person involved is in a position of confidence. Where such an encounter is of a nature that a minor victim may not appreciate the offensive nature of the conduct, the lack of a complaint would not necessarily justify an inference of a fabrication. As the testimony reveals in this case, the child had no reason to question the character of the conduct until her subsequent viewing of a film depicting this type of conduct. It is also significant that the party involved in the behavior was her father whom she would naturally trust and accept his judgment as to the propriety of the act. The encouragement by the father to maintain the confidence as to this incident also dilutes any inference drawn merely from a delayed complaint. In this setting the absence of an immediate outcry would not in and of itself warrant an inference that the event was a recent fabrication and,

therefore, a charge to that effect was properly denied by the trial court.

The trial judge in this case refused to instruct the jury with a charge specifically addressing the implications of a delay in making a complaint. The trial judge properly reasoned that the facts of this case did not necessitate the specific instruction on delay. The trial judge did instruct the jury thoroughly upon the general subject of credibility in accordance with the suggested instruction for witness credibility, PA Suggested Standard Jury Instructions (Crim.) § 4.17.[2]

These instructions provided the jury with those factors that are properly considered in ascertaining credibility. We believe that, under the fact of this case, this was sufficient to permit the jury to ascertain the truthfulness of the testimony offered by the minor complaining witness as well as of others who testified in this matter.

2. In instructing the jury the judge, using his own formulation, stated:

You have the sole responsibility of deciding whether the testimony of each witness in this case is truthful and accurate and is to be believed or disbelieved in whole or in part.

How, [sic] among the factors that you may and should consider in deciding whether a witness' testimony is worthy of belief are the following:

You should consider the witness' manner of testifying, how he or she looked, conducted themselves, and spoke while on the witness stand.

You should consider whether the witness' testimony was [a]ffected by reason of youth.

You should consider the witness' intelligence and his or her ability to observe and be informed about the matters to which he or she testified.

You should consider the witness' ability to remember the events about which he or she testified. You should consider whether the witness was positive and certain or hesitant and doubtful about the matters to which he or she testified.

You should consider whether the witness testified frankly and fairly or whether he or she showed favoritism or was biased in any way.

You should consider whether the witness has anything to gain or lose from the outcome of the case.

You should consider whether and to what extent the witness' testimony is supported by or contradicted by other evidence in the case which you believe.

The appellant's second claim of error asserts that the trial judge improperly permitted the Commonwealth to cross-examine the appellant's witness concerning her conclusion in the report made after an interview with the victim. This claim has no merit. The witness had testified on direct examination to the contents of the statements made by the victim. The Commonwealth, on cross-examination questioned the witness as to the category in which she placed this incident. The witness testified that as a result of the interview with the victim she considered the incident substantiated and forwarded the information to the State Welfare Department and to the police. The appellant's counsel objected to this testimony and the trial judge overruled the objection.

The generally accepted rule in the Commonwealth is that cross-examination should be limited to matters testified to on direct examination. *Woodland v. Philadelphia Transportation Co.,* 428 Pa. 379, 238 A.2d 593 (1968). However, this is broadly defined to include inferences, deductions or conclusions which may be drawn therefrom, which explain or destroy the effect of the direct testimony. *See, e.g., Martin v. Soblotney,* 296 Pa.Super. 145, 442 A.2d 700 (1982), *citing Lester v. Century Indemnity Co.,* 356 Pa. 15, 50 A.2d 678 (1947). Furthermore, the scope of cross-examination is largely within the discretion of the trial court and will not be reversed in the absence of a clear abuse or an error of law. *Commonwealth v. Schmidt,* 437 Pa. 563, 263 A.2d 382 (1970).

In this case the trial court permitted the Commonwealth to question the witness as to the conclusions she listed on her final report. This testimony properly reflected a conclusion drawn from the statement provided in the interview and brought out by the appellant on direct examination. Therefore, it cannot be considered an abuse of discretion to have permitted this line of cross-examination.

Accordingly, the Order of the Superior Court is affirmed.

PAPADAKOS, J., concurs in the result.