590 A.2d 334

**COMMONWEALTH of Pennsylvania**

v.

**Cecil L. ABLES, Sr., Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 19, 1991.

Filed April 30, 1991.

Petition for Allowance of Appeal Denied
Sept. 4, 1991.

172

W. Gustave McGeorge, Erie, for appellant.

Kenneth A. Zak, Asst. Dist. Atty., Erie, for Com., appellee.

Before HUDOCK, CERCONE and HESTER, JJ.

CERCONE, Judge:

This is a direct appeal from the judgment of sentence entered after appellant's conviction on one (1) count of rape,[1] one (1) count of statutory rape,[2] four (4) counts of involuntary deviate sexual intercourse,[3] six (6) counts of indecent assault[4] and six (6) counts of corruption of a minor.[5] A jury found appellant guilty after a four day trial and appellant's post-verdict motions were summarily denied at the sentencing hearing. This timely appeal ensued. For the reasons set forth below, we affirm.

Appellant raises eight issues for our review:

1. Whether the defendant is entitled to judgment of acquittal and/or a new trial on the rape conviction where the Commonwealth failed to prove access and/or forcible compulsion and on the statutory rape conviction where the defendant conclusively established nonaccess and asserts a *Devlin* claim.

2. Whether the judgment of sentence must be vacated where the prosecution failed to prove the dates of the alleged offenses of Involuntary Deviate Sexual Intercourse with reasonable certainty and where the verdict is contrary to the evidence.

3. Whether the trial court committed reversible error in not *sua sponte* ordering a mistrial when informed of jury misconduct.

4. Whether the lower court reversibly erred in refusing the defendant's request for a charge on lack of prompt complaint.

5. Whether the lower court improperly assumed the role of prosecutorial advocate thereby mandating a new trial.

1. 18 Pa. C.S.A. § 3121.
2. *Id.* § 3122.
3. *Id.* § 3123.
4. *Id.* § 3126.
5. *Id.* § 6301.

6. The defendant incorporates by reference all assignments of error set forth in his post-trial motions and not addressed by lower courts opinion.

We shall address these contentions *seriatim.*

The pertinent facts, as adduced in the trial testimony, indicate that Appellant initiated sexual relations with his niece, D.R., when she was thirteen years old. This conduct consisted of at least six different incidents of sexual intercourse and oral copulation, beginning in June, 1987 and continuing over the course of one year. The first incident occurred when D.R. slept overnight at appellant's house on or about June 8, 1987. During the night, appellant approached D.R., as she lay on a sofa in the living room and asked her to pull down her underwear. She did not comply and appellant pulled off her underwear and began sexual intercourse with her. After the intercourse, appellant told the girl not to tell anybody since he would get in trouble.

Thereafter, appellant victimized D.R. by forcing her to perform oral sex. The victim testified that five incidents occurred at various times over a one year period. However, D.R. could not provide a specific date for all the incidents. The first act of oral copulation transpired when appellant called D.R. at home on a weekday in July, 1987, at approximately 12:30 in the afternoon. Appellant asked the victim to walk to a nearby grocery store to meet him. They then drove to the Elk Creek Access Area where he inserted his penis in her mouth. The second episode occurred when D.R. was at appellant's residence. He escorted her to the basement and, again, inserted his penis into her mouth. The third occasion took place on Thanksgiving of 1987. The girl testified that she was visiting appellant and his family that evening and he took D.R. and her sister to his place of business to turn off the furnace. When they arrived at the business, appellant gave D.R.'s sister money to play a video game while he asked D.R. to accompany him to the furnace room. Once there he inserted his penis into the victim's mouth. The fourth and fifth incidents of oral copulation occurred at appellant's place of business. D.R. testified

that she was in the storeroom, and appellant asked her to come into a back room where he coerced her to perform oral sex.[6]

The last incident of sexual conduct occurred in appellant's home after the Lake City Volunteer Firemen's Picnic on June 10, 1988. D.R. testified that she was sleeping alone in her cousin's room at appellant's residence when he came in wearing a towel and inserted his penis into her vagina. She testified that after penetration, she rolled over and appellant left the room.

Appellant first argues that the evidence was insufficient to support his convictions of rape, statutory rape and involuntary deviate sexual intercourse. We will initially address appellant's rape conviction. Our standard of review based on sufficiency of the evidence is quite limited:

> The test for sufficiency of the evidence is whether accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Lovette*, 498 Pa. 665, 669, 450 A.2d 975, 977 (1982); *accord Commonwealth v. Robinson*, 316 Pa.Super. 152, 155, 462 A.2d 840, 841 (1983).

Appellant charges that the evidence was insufficient to support his conviction for rape because the Commonwealth failed to prove forcible compulsion or access to the defendant. According to the trial testimony, appellant raped D.R. on June 10, 1988, the night after he and his wife took D.R. to the Lake City Firemen's Picnic. The evidence shows that appellant approached D.R., who was alone in her cousin's bedroom, wearing a towel. He took the towel off

6. Although there were five incidents to which D.R. testified, the information only contained four counts of involuntary deviate sexual intercourse.

and inserted his penis into her vagina. After the penetration, she rolled over and he left. The question is now whether the evidence is sufficient to prove forcible compulsion.

Our supreme court has held that "forcible compulsion" as used in 18 Pa. C.S.A. § 3121(1) includes not only physical force or violence but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will. *Commonwealth v. Rhodes*, 510 Pa. 537, 555, 510 A.2d 1217, 1226 (1986). In *Rhodes*, appellee-defendant took the victim, an eight-year-old girl, to an abandoned building, asked her to put her legs up and proceeded to have anal and vaginal intercourse with her. A panel of this court found that the evidence was insufficient to find forcible compulsion because there was not one iota of evidence that sexual intercourse was accomplished by forcible compulsion or by threat of forcible compulsion. *Commonwealth v. Rhodes*, 332 Pa.Super. 273, 278, 481 A.2d 610, 613 (1984), *as cited in Rhodes, supra,* 510 Pa. at 544, 510 A.2d at 1220.

In a detailed opinion, our supreme court reversed finding that the eight-year-old victim was so mentally deficient as a matter of law, that she was incapable of consenting to the incident of sexual intercourse, thereby proving rape under section 3121. *Id.,* 510 Pa. at 558–59, 510 A.2d at 1228. In arriving at this result, the court analyzed the meaning of the term "forcible compulsion" in light of the purposes of the Crimes Code of 1972. Justice Larsen delineated the proper usage of the phrase "forcible compulsion," as found in section 3121, by contrasting the comparable section of the Model Penal Code and by analyzing various dictionary definitions of the pertinent terms. He opined:

In common usage, therefore, the phrase "forcible compulsion" clearly connotes more than the exercise of sheer physical force or violence.... The phrase also connotes the act of using superior force—physical, moral psycho-

logical, or intellectual—to compel a person to do a thing against that person's volition and/or will.

*Id.,* 510 Pa. at 553, 510 A.2d at 1225.

> The Superior Court has held that the "degree of force involved in rape ... is defined, not in terms of the physical injury to the victim, but in terms of the effect it has on the victim's volition." Accordingly, the force necessary to support convictions for rape ... need only be such as to establish lack of consent and to induce the woman to submit without additional resistance.... The degree of force required to constitute rape is relative and depends upon the facts and particular circumstances of the case.

*Id.,* 510 Pa. at 554, 510 A.2d at 1226 (citations omitted) (parenthetical omitted). The court then explained various factors to guide us in determining whether forcible compulsion exists.

> Such a determination is based on the totality of the circumstances that have been presented to the fact finder. Significant factors to be weighed in that determination would include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress. This list of possible factors is not exclusive.

*Id.,* 510 Pa. at 555–56, 510 A.2d at 1226. The court finally cautioned that it is neither desirable nor appropriate to attempt to delineate all of the possible circumstances that might tend to demonstrate that sexual intercourse was engaged in by forcible compulsion. *Id.,* 510 Pa. at 556, 510 A.2d at 1226. Thus, our conclusion will ultimately rest on the factual circumstances unique to this case.

Various decisions of this court have discussed *Rhodes* in determining whether forcible compulsion is present. *Compare Commonwealth v. Dorman,* 377 Pa.Super. 419, 547 A.2d 757 (1988) (appellant's conviction for the rape of his

thirteen-year-old niece was upheld where he took the victim to a remote location, pushed her on the seat of his car, removed her clothes, and had sexual intercourse with her despite her protests); *Commonwealth v. Ruppert*, 397 Pa.Super. 132, 579 A.2d 966 (1990) (forcible compulsion found where appellant had sexual intercourse with his nine-year-old daughter despite her crying during the incidents, and he showed her sexually explicit magazines to lower her resistance); *Commonwealth v. Titus*, 383 Pa.Super. 54, 556 A.2d 425 (1989) (evidence was insufficient to convict appellant of the rape of his thirteen-year-old daughter where the only evidence of forcible compulsion was the parent-child relationship). While we find these cases helpful in interpreting the proper bounds of "forcible compulsion", they do not adequately dispose of the issues presented in this case.

■ Here, appellant was the victim's uncle. This relationship tends to prove that the appellant enjoyed a relationship of trust and confidence with the victim. The uncle-niece relationship, however, is more attenuated than the parent-child relationship. Therefore, the relationship alone, however, will not suffice to find forcible compulsion. *Titus, supra,* 383 Pa.Super. at 63, 556 A.2d at 430. Also, this incident occurred at appellant's residence while his family was nearby. This is not the type of remote location found controlling in *Dorman, supra.* Further, there is no evidence to show that appellant actively lowered the victim's resistance by piquing her interest in sexual activity, as found in *Ruppert, supra.* Consequently, we must apply the test set forth in *Rhodes,* in the spirit in which it was given—by broadly interpreting the meaning of "forcible compulsion."

Viewing the facts in a light most favorable to the Commonwealth and all reasonable inferences therefrom, we find that despite a relationship of trust and confidence between the victim and her uncle, the uncle took advantage of this relationship to engage in sexual intercourse with her, which she resisted. N.T. 7/17/89 at 28. He then emotionally exploited her by requesting she not tell anyone about the

incident or he would get into trouble. He continued the pursuit of the sexual assaults relying on the impact of his intimidation to exact D.R.'s submission. We find that these sexual assaults, committed on that basis, sufficiently frustrated D.R.'s will to resist so as to find that she was raped by forcible compulsion. *Cf. Commonwealth v. Robinson, supra* (where a course of conduct is sufficient to sustain convictions for sexual assault despite the Commonwealth's failure to provide dates for all instances of sexual abuse); *Commonwealth v. Ruppert, supra* (evidence was sufficient to sustain convictions for sexual offenses where father repeatedly raped his nine-year-old daughter for a period of three months).

Appellant next argues that the evidence is insufficient to convict him of statutory rape. Specifically, he argues that the Commonwealth failed to establish the date of the incident with reasonable certainty. This argument is devoid of merit. The record clearly supports the finding that the incident for which appellant was convicted of statutory rape occurred on June 8, 1987. N.T. July 17, 1989, at 47.

█ Appellant's next contention of error is that the evidence is insufficient to convict him of involuntary deviate sexual intercourse. Specifically, he argues that the Commonwealth failed to establish the dates for these instances with reasonable certainty. Appellant relies on our supreme court's holding in *Commonwealth v. Devlin*, 460 Pa. 508, 333 A.2d 888 (1975) that due process under the United States and Pennsylvania Constitutions requires that the dates of a crime be fixed with reasonable certainty. *Id.,* 460 Pa. at 513, 333 A.2d at 891. The rationale for this rule is that it is fundamentally unfair to require the accused to defend a charge which occurred during an unreasonably large time span. The *Devlin* court, however, enunciated a case specific test to ascertain the exact degree of specificity required. Specifically, the court found that any leeway permissible would vary with the nature of the crime and the age and condition of the victim balanced against the rights of the accused. *Id.,* 460 Pa. at 515–16, 333 A.2d at 892.

Appellant directs us to the case of *Commonwealth v. Groff,* 378 Pa.Super. 353, 548 A.2d 1237 (1988) for the proposition that a child over eleven years of age would ordinarily have a more fully developed ability to remember the time of events than would a child of six or seven. *Id.,* 378 Pa.Superior Ct. at 364–65, 548 A.2d at 1243, n. 5. Relying on *Groff,* appellant argues that since D.R. was thirteen at the time the sexual abuse began, and was able to tell time and remember dates, her failure to allege specific dates on various occasions denied him due process under the United States and Pennsylvania constitutions. While we agree that the age of the victim becomes important in the balancing test outlined in *Devlin,* appellant's argument is misplaced.

Where the victim was a child, the crime had been repeated frequently over a lengthy period and the Commonwealth's evidence was sufficient to establish specific dates on several occasions, the convictions will be sustained. *Commonwealth v. Robinson, supra,* 316 Pa.Super. at 157, 462 A.2d at 842. Instantly, appellant's sexual abuse of D.R. occurred frequently over a one year interval. D.R. testified that one of the incidents occurred on Thanksgiving of 1987 (a specific date). Another incident occurred on June 10, 1988 while D.R. attended the Lake City Volunteer Firemen's picnic, while yet another incident occurred in July 1987. Also, D.R. testified that other incidents of sexual intercourse occurred on June 8, 1987 and June 10, 1988. Thus, D.R. has given several specific dates. Since we find that the Commonwealth has established the dates of the offenses charged with reasonable certainty, appellant's convictions on the counts of involuntary deviate sexual intercourse are upheld.

Implicitly, appellant argues that his convictions for rape, statutory rape and involuntary deviate sexual intercourse must be overturned because the verdicts are against the weight of the evidence. Appellant contends that his witnesses conclusively established non-access to the victim at the time of the various incidents. Our scope of review for a claim that the verdict is against the weight of

the evidence is very narrow. *Commonwealth v. Hamilton,* 376 Pa.Super. 404, 414, 546 A.2d 90, 95 (1988), *allocatur denied,* 521 Pa. 629, 558 A.2d 531 (1989). The determination of whether to grant a new trial because the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. *Commonwealth v. Paquette,* 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. *Commonwealth v. Zapata,* 447 Pa. 322, 327, 290 A.2d 114, 117 (1972). A claim that the evidence presented at trial was contradictory and unable to support the verdict requires the grant of a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Id.* After reviewing the record, we do not find that D.R.'s testimony was so unreliable that the resulting verdicts shock our sense of justice. Accordingly, we find no basis on which to grant relief to the appellant on this claim.

Appellant's third assertion is that the trial judge committed reversible error in failing to declare a mistrial when presented with certain juror misconduct. Trial counsel informed the trial judge of a conversation between two jurors in the woman's restroom. The trial judge conducted a *voir dire* interview of the jurors and subsequently dismissed one juror who admitted to participating in conversation about the case. However, appellant's counsel never requested a mistrial. A defendant is required to request a mistrial because of an event prejudicial to him when the event is disclosed. Pa.R.Crim.P., Rule 1118, 42 Pa. C.S.A. Since appellant failed to move for a mistrial, he cannot now complain that the court erred in failing to grant a mistrial

when no such motion was made.[7] *Commonwealth v. Tallon*, 478 Pa. 468, 477, 387 A.2d 77, 82 (1978). We therefore deem this issue waived.

■ Appellant's fourth claim is that the trial court erred in refusing to instruct the jury on the issue of "prompt complaint." Specifically, appellant argues that the trial court should have instructed the jury on the lack of prompt complaint by the victim because the defense relied at trial on the theory that the events alleged by D.R. never occurred. We disagree. Appellant directs us to our supreme court's decision in *Commonwealth v. Snoke*, 525 Pa. 295, 580 A.2d 295 (1990). In that case, the court set out the circumstances under which a trial court must instruct the jury on "prompt complaint."

> [W]here the actual occurrence of the assault is at issue in the case, the trial judge is *required* to charge the jury as to the relevance of a delay in disclosure and the significance of a prompt complaint. In such an assessment the witness' understanding of the nature of the conduct is critical. Where the victim *did not* comprehend the offensiveness of the contact at the time of its occurrence, the absence of an immediate complaint may not legitimately be used to question whether the conduct did in fact occur.

*Id.*, 525 Pa. at 302, 580 A.2d at 298 (emphasis added).

■ While the average thirteen- or fourteen-year-old girl may have developed some knowledge regarding sexual relations, we decline to find that every girl of that age has this knowledge. Thus, where there is no conclusive evidence regarding a minor victim's comprehension of the offensive acts in question, the trial court must consider other factors to determine whether that victim may have a legitimate reason for delay in complaining. We find the factors set

---

7. Appellant's counsel argues that since the trial judge considered whether to grant a mistrial after the Commonwealth's refutation of the grounds for such a mistrial this issue is preserved for appellate review. However, his cursory consideration of a mistrial is insufficient to preserve the issue on appeal. Pa.R.Crim.P., Rule 1118, 42 Pa. C.S.A. In fact, appellant's counsel was reluctant to motion the court for a mistrial. N.T. 7/19/89 at 113.

out by our supreme court in *Rhodes, supra,* to determine whether forcible compulsion was present to prove rape equally compelling here. These factors include age of the victim, the mental and physical condition of the victim, the atmosphere and physical setting in which the incidents were alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress. *Rhodes, supra,* 510 Pa. at 555–56, 510 A.2d at 1226.

 In this case, the trial judge erred in determining that 18 Pa. C.S.A. § 3105 precludes an instruction regarding prompt complaint. *Snoke* allows such a charge when the actual occurrences of the sexual assaults are in issue *and* where the victim comprehends the offensiveness of the sexual assaults at the time of their occurrence. The record in this case, however, is devoid of any evidence of what the victim comprehended regarding these sexual assaults.[8] The logical inference from the victim's testimony is that other legitimate factors may have influenced her not to tell about these incidents. Her uncle told her not to tell anyone lest

---

8. Reviewing the victim's testimony, we find the following discussions:
 Q. (by the district attorney)
 Okay. And at that time did you tell anyone about this?
 A. (by the victim)
 No, I didn't.
 Q. And I'm going to ask you why not?
 A. Because I was too scared.
 N.T. 7/17/89 at 30. This was the only reason D.R. gave to explain her delay in complaining about the sexual assaults. Subsequently, on cross-examination, D.R. testified that, as a result of a boy at her school exposing himself to her, she became traumatized and then told various school officials about her uncle's sexual assault.
 Q. (by the defense attorney)
 At the [preliminary] hearing you testified that that was September 12th that he had been exposing himself, had this Dana exposed himself to you?
 A. (by the victim)
 Yes.
 Q. Okay. And you said that that was so traumatic that that brought [out] everything that had happened from June of '87 until June of '88 involving your uncle, is that correct?
 A. Yes.
 N.T. 7/17/89 at 62–63.

he get in trouble. Moreover, the victim was at a difficult age to be able to adequately comprehend the nature of the acts perpetrated against her. The circumstances involved here lead us to conclude that the minor victim was under sufficient duress to legitimately explain her delay in complaining. Therefore, despite the trial court's misapplication of the pertinent law, it was not error for the court to refuse to charge on prompt complaint.

Next, appellant contends that a new trial should be granted because the trial judge acted improperly by questioning witnesses and acting as a prosecutorial advocate. A new trial is required only when the trial court's questioning is prejudicial, that is when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. *Commonwealth v. Purcell*, 403 Pa.Super. 342, 356, 589 A.2d 217, 224 (1988). It is always the right and sometimes the duty of the trial judge to interrogate witnesses. However, questioning from the bench should not show bias or feeling or be unduly protracted. *Id.*, 403 Pa.Superior Ct. at 355, 589 A.2d at 223. Instantly, appellant contends that the trial judge propounded skeptical and misleading questions to defendant's expert, Dr. Molina. Doctor Molina was qualified as an expert witness and gave an opinion that because appellant suffered from a kidney ailment in the Spring of 1988, it would have been difficult, but not impossible, for appellant to perform sexually in June of that year. The testimony was offered to show that appellant was incapable of sexual activity during the time he was being treated. The trial judge questioned the doctor regarding appellant's treatment for his kidney condition. He then asked whether it was impossible for appellant to engage in sexual activity during the time period in question. Dr. Molina testified that it was not impossible. N.T. 7/18/89 at 108–09.

The trial judge stated that his questioning was to clarify Dr. Molina's testimony. N.T. 7/18/89 at 109. While such questioning is better left to the trial attorneys, we find that

the questioning merely clarified Dr. Molina's testimony. Moreover, appellant's contention that the trial judge severely limited Dr. Molina's testimony regarding his pain and suffering is unfounded. Appellant has not directed us any such incident in the record, nor have we found any evidence to support this contention. We see no indication in the record that the trial judge's questioning of witnesses deprived appellant of a fair and impartial trial, and conclude the lower court's actions were proper.

■■■ Regrettably, appellant's last argument avers that this court should entertain all arguments appellant raised in his post-trial motions which the trial court failed to address. Such a contention is not sufficient to facilitate appellate review under Pa. R.A.P. Rules 2116 and 2119. *See First Seneca Bank v. Greenville Distributing Company*, 367 Pa.Super. 558, 533 A.2d 157 (1987) (where a panel of this court held that the phrase "and other reasons" tacked onto statement of questions is insufficient to argue issues not specifically presented for review). Thus, we can grant no relief on this claim.

Judgment of Sentence affirmed.