J-S41001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WALTER ALEXANDER LOPEZ | : | |
| | : | |
| Appellant | : | No. 888 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 19, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000210-2019

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: FEBRUARY 22, 2023**

Walter Alexander Lopez appeals from the judgment of sentence, entered in the Court of Common Pleas of Berks County, after being convicted by a jury of rape,[1] statutory sexual assault,[2] sexual assault,[3] aggravated indecent assault,[4] and indecent assault.[5]  After review, we affirm.

During the summer of 2018, Lopez moved into H.Z.'s (minor victim) family's home, where H.Z.'s mother (Mother) and H.Z.'s three brothers also

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. 3121(a)(1).

[2] *Id.* at 3122.1(a)(1).

[3] *Id.* at 3124.1.

[4] *Id.* at 3125(a)(8).

[5] *Id.* at 3126(a)(8).

resided. N.T. Jury Trial, 2/14/21, at 73-75. Lopez is H.Z.'s uncle. *Id.* at 133. Beginning in September 2018, Lopez (19 years old) began to tickle H.Z. (13 years-old), touching her legs, arms, and hair. *Id.* at 83. Lopez would "play it off as just joking." *Id.* H.Z. did not tell anyone, but became "very distanced" and began to have a bad relationship with Mother. *Id.* at 82.

H.Z. testified that starting in November 2018, Lopez began touching her "private parts" over her clothing and told H.Z. "not to say anything" or Lopez would "hurt [Mother] or [H.Z.'s] little brothers." *Id.* at 84. H.Z. clarified that her private parts included her "breasts and vagina." *Id.* at 97. H.Z. also testified that "[Lopez] would put his hands underneath [her] clothes by lifting up [her] shirt or [her] pants," *id.* at 86, and that Lopez wanted her to touch or rub his penis with her hand. *Id.* at 88.

H.Z. testified that Lopez "[f]orced [her] to have sexual intimacy with him and not just by touching." *Id.* at 89. The following exchange took place during direct examination.

[Assistant District Attorney]: Did he ever try to touch you inside of your body with his hands?

[H.Z.]: Slightly.

[Assistant District Attorney]: When you say slightly, what do you mean?

[H.Z]: Just rubbing with his fingers.

[Assistant District Attorney]: Now, understanding what a female's privates are like, was he able to put his fingers inside of you even a little bit?

[H.Z.]: Yes.

* * *

[Assistant District Attorney]: To be clear, what part of his body was on what part of your body?

[H.Z.]: His penis was in my vagina.

*Id.* at 87.

H.Z. testified that Lopez would "hold [her] two hands with one hand . . . . . pin[nig] them to the couch," "pull down [her] pants," *id.* at 90, and lay down on top of her. *Id.* at 91. This happened "three or four times." *Id.* H.Z. testified that "[she] would always turn [her] face and not look at [Lopez]," *id.* at 92, and that Lopez "would have his face near [her] neck and [be] breathing down [on her]." *Id.* at 92. H.Z. was able to push Lopez off of her during one of these episodes because he was not holding her hands down. *Id.* at 93.

These incidents occurred on a red couch in H.Z.'s living room, *id.* at 85, 96, and while H.Z.'s mother was working. *Id.* at 88. Lopez never used a condom and would ejaculate on top of H.Z. vagina, although sperm sometimes fell on the couch.[6] *Id.* at 91-92. H.Z. testified that Lopez would say a term of endearment in Spanish to her and that she did not feel the same way about Lopez. *Id.* at 90. H.Z. and Lopez were not married and were not dating. *Id.* at 82, 91. H.Z. tried to avoid Lopez by staying near her Mother or her brothers when they were home or FaceTiming a friend. *Id.* at 93, 98.

H.Z. told her mother about these incidents in December 2018, a few weeks after they stopped. *Id.* at 104. H.Z. believed that Lopez stopped

---

[6] The parties stipulated that Lopez's DNA matched spermatozoa found on the red couch. N.T. Jury Trial, 2/15/22, at 172-73.

because he was FaceTiming a girl. *Id.* H.Z. waited to tell Mother because H.Z. was "still afraid of everything [Lopez] would say[,] that he [w]ould hurt my mom or my little brothers." *Id.* at 105.

Mother and E.G., Lopez's cousin, confronted Lopez. Mother testified that "[Lopez] said that he had raped her and that he didn't want to but that he had done it." *Id.* at 138. Garcia testified that, "I asked [Lopez] why he had done this and he told me that he did not think about it when he did this." *Id.* at 126. Garcia also testified that during the confrontation, "H.Z. was downstairs on the floor screaming, crying." *Id.*

Doctor Renee Riddle, a pediatrician employed by Tower Health Children's Health Center, performed a medical evaluation of H.Z. on January 10, 2019. *Id.* at 117. Although H.Z.'s exam showed no signs of penetration, Dr. Riddle did not expect to find signs of penetration or trauma. *Id.* at 120. Doctor Riddle testified that: "Our bodies are smart[,] and we have sex all the time and it doesn't cause damage. The delay from the encounter to the exam, if there was damage, it may be healed. Also, it's just a physiological thing that occurs so damage often does not happen." *Id.* at 119.

Sergeant Gerardo Vega, a Berks County District Attorney's Office detective, reviewed a prison phone call between Lopez and his friend, G.F. During the call, Lopez stated that H.Z. was "horny," "likes dick" and "wasn't ashamed." *Id.* at 157. Lopez also laughed when discussing the possibility of H.Z. being pregnant. *Id.* at 156. Sergeant Vega testified, "[Lopez] goes on to say that they're pissed off that he ate her ass because they thought they

were going to celebrate her 15th birthday and she was going to be a virgin."

*Id.*

On January 30, 2019, Lopez was charged with the above-mentioned crimes and proceeded to a jury trial on February 14, 2022. Following trial, Lopez was convicted on all counts. Sentencing was deferred pending a presentencing investigation (PSI) report and Sexual Offender's Assessment Board report. On May 19, 2022, Lopez was found not to be a sexually violent predator. Thereafter, Lopez was sentenced to an aggregate term of thirteen and one-half years to thirty-two years' incarceration and ordered to register as a Tier III sexual offender for a period of twenty-five years.[7] Lopez filed a post-sentence motion, which was denied. Lopez filed a timely notice of appeal to this Court, and both he and the trial court have complied with Pa.R.A.P. 1925. Lopez raises the following issues for our review:

1. Were there insufficient facts o[f] record from which it could be inferred[,] beyond a reasonable doubt[,] that the sexual acts between [Lopez] and [H.Z.] were non-consensual (in the ordinary not-age-related sense)?

2. Did the verdicts otherwise go against the weight of the evidence because of the unreliability of adverse testimony, *inter alia*?

3. Were the length and consecutive nature of the sentences imposed on [Lopez] manifestly unreasonable and did the court abuse its discretion in imposing them by neglecting to consider adequately the mitigating factors of the case?

Appellant's Brief, at 6.

_____

[7] Lopez's statutory sexual assault and sexual assault convictions merged with his rape conviction for the purposes of sentencing.

- 5 -

Lopez first contends that the evidence supporting his rape and sexual assault convictions is insufficient to show that the sexual acts between him and H.Z. were non-consensual. Lopez supports his argument as follows: H.Z. did not verbally protest during the sexual acts; H.Z.'s attempt to force Lopez away does not necessarily indicate a lack of consent; H.Z. did not tell anyone until after she found out Lopez was dating someone else; the way H.Z. described the physical acts are almost physically impossible; and Dr. Riddle found no evidence of violent force or trauma. *See* Appellant's Brief, at 19-21. Lopez is entitled to no relief.

This Court's review of sufficiency claims is well-settled:

When reviewing challenges to the sufficiency of the evidence, [this Court] evaluates the record in the light more favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. In addition, the court may not substitute its judgment for that of the fact[-]finder, and where the record contains support for the convictions, they may not be disturbed. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented.

*Commonwealth v. Smith*, 146 A.3d 257, 261-62 (Pa. Super. 2016) (quotations and citations omitted).

A person commits rape when "the person engages in sexual intercourse with complainant[ b]y forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1). To demonstrate forcible compulsion beyond a reasonable doubt, the

Commonwealth must establish that the defendant "used either **physical force**, a threat of physical force, or **psychological coercion**, since the mere showing of a lack of consent does not support a conviction for rape by forcible compulsion." *Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) (emphasis added). *See Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986) ("the degree of force involved in rape . . . . is defined [by] the effect it has on the victim's volition").

> A determination of forcible compulsion rests on the totality of the circumstances, which includes but is not limited to this list of factors:
>
>> [T]he respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 720-21 (Pa. Super. 2015) (citations and emphasis omitted).

Additionally, "[a] person commits [sexual assault] when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. In *Commonwealth v. Buffington*, 828 A.2d 1024 (Pa. 2003), our Supreme Court determined that sexual assault is a lesser included offense of rape. *Id.* at 1031-33 (both require showing of sexual intercourse and "forcible compulsion encompasses a lack of consent").

In *Commonwealth v. Ables*, 590 A.2d 334 (Pa. Super. 1991), the defendant was convicted of, *inter alia*, raping his 13-year-old niece. *Id.* at 335-36. The *Ables* Court found forcible compulsion where the defendant emotionally exploited the victim by requesting that she not tell anyone or that the defendant would get in trouble. *Id.* at 338. The defendant "reli[ed] on the impact of his intimidation to exact [the victim's] submission" and, thus, sufficiently frustrated her will to resist. *Id.* The *Ables* Court also determined that the minor victim was under sufficient duress due to her age and the aforementioned threat to legitimately explain her delay in complaining. *Id.* at 341.

Instantly, Lopez threatened to hurt Mother and H.Z.'s brothers if H.Z. told anyone about the incidents. N.T. Jury Trial, 2/14/22, at 85-86. H.Z. believed these threats to be true. *Id.* at 86 (H.Z. stating "I can't live without my mom or my little brothers" and "I think everyone is capable to do anything when it comes to violence."). These threats, combined with H.Z.'s young age, are sufficient to show both forcible compulsion through emotional exploitation and lack of consent, and to explain the delay in H.Z. telling her Mother. *See Ables*, *supra*.

Evidence is also sufficient to show forcible compulsion through physical force. H.Z. testified that, "[Lopez] would usually hold my two hands with one hand. . . he would pin my hands on the couch next to me." N.T. Jury Trial, 2/14/21, at 90. Additionally, H.Z. stated, "I would try to [] to push him off with [] my body. Sometimes I wasn't able to use my hands." *Id.* at 93. A

- 8 -

jury could reasonably infer from these statements that Lopez used superior physical force to induce submission. ***Buffington***, ***supra***; ***Rhodes***, ***supra***.

Moreover, Lopez's argument that H.Z. did not verbally or physically indicate her lack of consent, and, thus, he had no reason to be aware of it is meritless. Pursuant to 18 Pa.C.S.A. § 3107, "the alleged victim need not resist the actor in prosecutions under this chapter." ***See also Rhodes***, 510 A.2d at 1227 n.14 ("lack of consent is not synonymous with lack of resistance"). Instantly, H.Z. was not physically able to resist because Lopez pinned her hands down on the couch. ***See*** N.T. Jury Trial, 2/14/22, at 90, 93. H.Z. also explained that other times she "[d]idn't know what to do in the moment so [she] would just be still and just in shock." ***Id.*** at 87. Accordingly, H.Z.'s purported lack of resistance cannot constitute consent. ***See Rhodes***, ***supra***.

Further, Lopez's argument that Dr. Riddle's testimony is exculpatory affords him no relief. Dr. Riddle explained that the examination occurred months after the assaults occurred and, thus, she did not expect to find any evidence of trauma. N.T. Jury Trial, 2/15/22, at 119-20. Additionally, medical testimony is not necessary to corroborate H.Z.'s testimony. ***Commonwealth v. Gabrielson***, 536 A.3d 401 (Pa. Super. 1988) (uncorroborated testimony of victim, if believed by the jury, is sufficient to support a rape conviction). Here, H.Z. testimony details the incidents, including that Lopez held her down and threatened her family. This testimony was believed by the jury. ***Id***; ***Smith***, ***supra***.

In light of the foregoing, the evidence presented at trial was sufficient for a jury to find forcible compulsion through both emotional exploitation and physical force and that H.Z. did not consent. **Ables**, **supra**.

Next, Lopez next contends that his convictions are against the weight of the evidence because the jury "ignored the countervailing exculpatory evidence," including the prison phone-calls between him and G.F. Appellant's Brief, at 23, 25. Lopez also claims that Mother's statement that H.Z. had told Mother that Lopez "raped [her] without consent," and that Mother's statement that Lopez admitted that he "raped" H.Z. "smack[] a little too much of canned preparation." Appellant's Brief, at 25, quoting N.T. Jury Trial, 2/14/22, at 126, 138. Additionally, Lopez reiterates the arguments in his sufficiency claim.

This Court reviews weight of the evidence claims for an abuse of discretion:

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. [This Court] cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, [this Court's] role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Hunzer**, 868 A.2d 498, 506-07 (Pa. Super. 2005). Additionally, "[a] motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient

evidence to sustain the verdict. Thus, the trial court is under no obligation to review the evidence in the light most favorable to the verdict winner." *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005) (citations omitted).

The trial court addressed Lopez's weight claim as follows:

The jury in the matter *sub judice* was free to assign credibility to the testimony and evidence presented at the trial, including H.Z.'s testimony that [Lopez] had rape[d] and sexually assaulted her by forcible compulsion and without her consent. The jury was well within its province as the finder of fact to believe Dr. Riddle[,] who stated that [] her examination of H.Z, was a "normal examination" to the extent that the body was able to heal from any damage caused. The jury also heard testimony regarding Appellant's DNA found on the couch cushions where H.Z. testified that the sexual assaults occurred. Therefore, we believe that this court did not err in denying Appellant's post-sentence motion challenging the weight of the evidence.

Trial Court Opinion, 8/11/22, at 12.

Based on our comprehensive review of the record, we can discern no palpable abuse of discretion in the trial court's ruling on this issue. Thus, we conclude that Lopez's rape and sexual assault convictions were not against the weight of the evidence. *Hunzer*, *supra*.

Lopez's third claim challenges the discretionary aspects of his sentence, from which there is no automatic right to appeal. *See Commonwealth v. Austin*, 66 A.3d 798, 807-08 (Pa. Super. 2013). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v.*

- 11 -

***Yanoff***, 690 A.2d 260, 267 (Pa. Super. 1997).  Prior to reaching the merits of

a discretionary aspects of sentencing issue,

> [this Court conducts] a four-part analysis to determine:  (1) whether the appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation

marks and some citations omitted).

Presently, Lopez filed a timely notice of appeal and preserved his issues

in a post-sentence motion for reconsideration.  Further, Lopez's brief includes

a concise statement of reasons relied upon for allowance of appeal with

respect to the discretionary aspects of his sentence pursuant to Rule 2119(f).

Thus, we must determine if Lopez raises a substantial question.

A substantial question exists when "the appellant advances a colorable

argument that the sentencing judge's actions were either:  (1) inconsistent

with a specific provision of the Sentencing Code; or (2) contrary to the

fundamental norms which underlie the sentencing process." ***Commonwealth***

***v. Austin***, 66 A.3d 789, 808 (Pa. Super. 2013).  Additionally, "we cannot look

beyond the statement of questions presented and the prefatory Rule 2119(f)

statement to determine whether a substantial question exists."

***Commonwealth v. Radecki***, 180 A.3d 441, 468 (Pa. Super. 2018).

Lopez's Rule 2119(f) statement and questions presented on appeal allege that the sentencing court abused its discretion where the length and consecutive nature of the sentence imposed is manifestly unreasonable because the sentencing court did not adequately consider the mitigating factors. Appellant's Brief, at 13.

In **Commonwealth v. Johnson**, 961 A.2d 877 (Pa. Super. 2008), this Court determined that a defendant's claim that a sentencing court abused its discretion by imposing consecutive sentences without properly considering mitigating factors failed to present a substantial question. **Id.** at 880; **see Commonwealth v. Hoag**, 665 A.2d 1212, 1213 (Pa. Super. 1995) ("we see no reason why [a defendant] should be afforded a 'volume discount' for his crimes by having all sentences run concurrently"). Accordingly, Lopez has not raised a substantial question and is not entitled to a review of this claim on the merits.

However, even if we were to find a substantial question, Lopez is afforded no relief. Lopez argues that the court failed to consider the relative lack of disparity between the parties' ages, the lack of evidence involved, and that the acts, if non-consensual, were barely so. Appellant's Brief, at 27. Lopez also claims the indictments should be treated as a single criminal episode warranting concurrent sentences. **Id.**

Pursuant to section 9721, of the Sentencing Code, it is within a trial court's discretion to impose sentences of imprisonment consecutively or concurrently to one another, and this determination will not be disturbed

absent a finding of manifest excessiveness of an aggregate sentence. 42 Pa.C.S.A. § 9721(a). Additionally, in fashioning a sentence the trial court shall consider the gravity offense scores, the defendant's rehabilitative needs, the impact on the victim and the community, and the need to protect the public. *Id.* at § 9721(b). Further, where the sentencing court has the benefit of a PSI, we can assume it was aware of the defendant's character and weighed those considerations along with mitigating factors. *See Moury*, *supra* at 171.

Here, in fashioning Lopez's sentence the trial court considered the testimony at trial, H.Z.'s statement at sentencing, a PSI, offense gravity scores, Lopez's prior record score (0), and the surrounding circumstances, including that "[Lopez] was given refuge and shelter [at H.Z.'s family's home] and chose to commit these horrible assaults on his niece." N.T. Sentencing, 5/25/22, at 10-11.

Further, any purported lack of disparity in age is of no consequence when forcible compulsion exists. Additionally, there is no sliding scale consent determination recognized anywhere in our law. Moreover, Lopez's conduct was not a single criminal episode. Starting in September 2018, Lopez began to tickle H.Z.'s arms and legs. N.T. Jury Trial, 2/14/22, at 83. Sometime in November 2018, Lopez began to touch underneath H.Z.'s clothing and then have intercourse with her. *Id.* at 86. H.Z. testified that Lopez had sexual intercourse with her "three or four times." *Id.* at 92.

Based on the foregoing, the trial court did not abuse its discretion in fashioning Lopez's sentence. *Johnson*, *supra*; *Hoag*, *supra*.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/22/2023