J-S23033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                     :          PENNSYLVANIA
                                                       :

              v.                                        :

                                                      :

MARK HATCHER                               :
                                                      :
             Appellant                     :       No. 2282 EDA 2024

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003325-2022

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:           **FILED SEPTEMBER 5, 2025**

Mark Hatcher ("Hatcher") appeals from the judgment of sentence imposed following his jury convictions for one count each of rape, statutory sexual assault, sexual assault, and indecent assault without consent of another, as well as three counts each of indecent assault of persons under thirteen and under sixteen.[1] On appeal, Hatcher claims the trial court erred in failing to give a prompt complaint instruction to the jury and that two of the counts of indecent assault of a person under thirteen were improperly graded as third-degree felonies. Because Hatcher's claims are either waived or do not merit relief, we affirm.

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3122.1, 3124.1, 3126(a)(1), 3126(a)(7), 3126(a)(8).

We take the underlying facts and procedural history in this matter from the trial court's opinion and our review of the certified record. Hatcher is a prominent Philadelphia pastor. *See* Trial Court Opinion, 11/22/24, at 4. In 2000, Hatcher's niece, L.R., then aged fifteen, was living with Hatcher and his family during the school year. *See id*. at 4. In December 2000, Hatcher was home alone with L.R. and walked into her room wearing only a robe. *See id*. He began to talk to her and at some point, Hatcher lay on L.R.'s bed and exposed his naked body to her. *See id*. at 5. Hatcher then moved behind L.R. and began to grope her breasts, causing L.R. to freeze in fear. *See id*. Hatcher asked L.R. if he was making her uncomfortable and when she agreed, ceased the assault. *See id*. The next day, an extremely upset L.R. disclosed the event to her mother; because she did not want to cause a family crisis, L.R. stayed at Hatcher's home for a few more weeks and did not go to the police. *See id*.

In 2005 and/or 2006, the then twelve- or thirteen-year-old R.S., the daughter of a very close friend and congregant of Hatcher, would sometimes stay at Hatcher's home overnight, or Hatcher would stay at her mother's house. *See id*. at 5-6. On one occasion while the two were sitting together, Hatcher hugged R.S., pulled her on top of him, kissed her on the mouth, and groped her breasts. *See id*. at 6. Another time, R.S. lay on the floor pretending to sleep and Hatcher again touched her breasts and sucked on her nipples. *See id*. In 2006, Hatcher took R.S. to dinner in New Jersey. As they

drove home, Hatcher stopped at a house in Philadelphia which his church owned, saying he needed to check the lighting. *See id*. Hatcher brought R.S. into the house and took her upstairs to a room with a mattress lying on the floor. *See id* at 6-7. Hatcher pulled R.S. onto the mattress, pulled down her pants and penetrated her vagina with his penis. *See id*. Hatcher then abruptly stopped and said he was saving R.S. for her husband. *See id*. Approximately two years later, R.S. disclosed the incident to her parents and gave a statement to the police. However, the Philadelphia District Attorney's Office declined to prosecute because R.S.'s parents would not agree to a rape kit. *See id*.

In the summers of 2007 and 2008, Hatcher's then six- or seven-year-old great-nephew, P.R., would frequently stay at Hatcher's home. *See id*. at 7-8. On multiple occasions during the two summers, Hatcher pulled down P.R.'s pants, touched P.R.'s buttocks and penis, kissed him on the mouth, and, on one occasion, Hatcher made P.R. masturbate him until he ejaculated. *See id*. at 8-9. P.R. did not disclose the incidents. *See id*.

In 2021, P.R. disclosed the abuse to his mother, who told several family members about the incidents. *See id*. at 9-10. L.R. learned about the abuse of P.R. from a family member; ultimately, the Whitpain Police Department investigated the abuse. *See id*. at 10. The Commonwealth charged Hatcher, and a jury convicted him of the aforementioned charges. In August 2024, the trial court found Hatcher to be a sexually violent predator

and sentenced him to an aggregate sentence of five years and three months to twelve years in prison to be followed by three years of probation. This appeal followed.[2]

> Hatcher raises two issues for our review:
>
> [I.] Whether the trial court imposed an illegal sentence by grading two indecent assault convictions as third-degree felonies, where there was no evidence showing that [] Hatcher engaged in a course of conduct of abuse, as required for elevating the grades of the offenses under 18 Pa.C.S.A. § 3126(b)(3)(ii)[?]
>
> [II.] Whether the trial court abused its discretion by denying [] Hatcher's request for a prompt complaint jury instruction, where most complainants waited more than a decade to report the incidents[?]

Hatcher's Brief at 3 (citation format regularized).

In his first issue, Hatcher contends the trial court imposed an illegal sentence because the evidence was not sufficient to establish a course of conduct **on counts seven and eight**, indecent assault of a person under age thirteen as required to grade indecent assault as a felony. **See** 18 Pa.C.S.A. § 3126(b)(3)(ii); Hatcher's Brief at 11-16. **See also Commonwealth v. Sanchez**, 848 A.2d 977, 986 (Pa. Super. 2004) (holding a claim the trial court improperly graded an offense raises a challenge to the legality of sentence).

This Court is not required to accept an appellant's framing of an issue as a challenge to the legality of sentence; rather we are "to carefully scrutinize the substance of . . . purported non-waivable claims to ascertain whether the

_____

[2] Hatcher and the trial court complied with Pa.R.A.P. 1925.

actual nature of the challenge is to the sentence or the conviction." ***Interest of D.P.***, 233 A.3d 847, 851 (Pa. Super. 2020).

Our review of Hatcher's brief demonstrates he challenges the sufficiency of the evidence supporting his ***conviction*** of indecent assault as a felony, not his sentence. ***See*** Hatcher's Brief at 11-16. Hatcher never mentions the sentence but instead discusses, in the light most favorable to himself, why the evidence was not sufficient to demonstrate a course of conduct. ***See id***. ***See also D.P.***, 233 A.3d at 851-52 (concluding purported challenge to the legality of sentence was a challenge to the sufficiency of the evidence where appellant never discussed the dispositional order or its legality but rather whether sufficient evidence supported adjudication of indecent assault as a third-degree felony arising from a course of conduct).

Hatcher waived his sufficiency claim. Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***see also Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in* ***Commonwealth v. Burton***, 973 A.2d 428, 431 (Pa. Super. 2009) (*en banc*). In his Rule 1925(b) statement, Hatcher raised a course of conduct challenge to count six, not counts seven and eight. ***See*** Statement of Matters Complained of on Appeal, 9/18/24, at 2 (unnumbered). Thus, in its 1925(a) opinion, the trial court only discussed a challenge to the sufficiency of the

evidence underlying count six.  **See** Trial Court Opinion, 11/22/24, at 17-19.

There was no reason, given the specificity of the Rule 1925(b) statement, for

the trial court to conclude that, despite his assertion to the contrary, Hatcher

was challenging the sufficiency of the evidence with respect to counts seven

and eight rather than count six.  Thus, Hatcher waived his challenge to the

sufficiency of the evidence underlying counts seven and eight.

In his second and final claim, Hatcher complains the trial court erred in

denying his request for a prompt complaint instruction to the jury.  **See**

Hatcher's Brief at 16-21.  Pertinently:

> In reviewing a jury charge, we determine whether the trial court
> committed a clear abuse of discretion or an error of law which
> controlled the outcome of the case.  We must view the charge as
> a whole; the trial court is free to use its own form of expression
> in creating the charge.  A trial court has broad discretion in
> phrasing its instructions[] and may choose its own wording so long
> as the law is clearly, adequately, and accurately presented to the
> jury for its consideration.  Moreover, it is well[] settled that the
> trial court has wide discretion in fashioning jury instructions.  **The
> trial court is not required to give every charge that is
> requested by the parties and its refusal to give a requested
> charge does not require reversal unless the appellant was
> prejudiced by that refusal.**

**Commonwealth v. Williams**, 176 A.3d 298, 314 (Pa. Super. 2017)

(quotation marks, citations, and brackets omitted, emphasis added).

Furthermore:

> Defendants are generally entitled to instructions that they have
> requested and **that are supported by the evidence**. Where a
> defendant requests a jury instruction on a defense, the trial court
> may not refuse to instruct the jury regarding the defense if it is
> supported by evidence in the record. . . .[A] trial court shall only
> instruct on an offense where the offense has been made an issue

in the case and where the trial evidence reasonably would support such a verdict. We have explained that the reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. A criminal defendant must, therefore establish that the trial evidence would reasonably support a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial.

*Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014) (internal citations and quotation marks omitted, emphasis added).

Hatcher complains the victims unreasonably and without explanation delayed reporting the abuse, and therefore he was entitled to a prompt complaint charge. *See* Hatcher's Brief at 16. Hatcher maintains the lack of prompt complaints in the instant matter raises doubt regarding whether the victims fabricated the complaints or were acts of revenge. *See id*. at 17.

The trial court disagreed, accurately stating the law with respect to prompt complaint instructions:

> The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. *See Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006). This is especially true where the perpetrator is one with authority or custodial control over the victim. *See id*. (citation omitted). There is no policy in Pennsylvania jurisprudence that the prompt complaint instruction be given in every case. *See Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013). The fact of a lengthy delay prior to the victim's complaint of sexual abuse does not alone justify the prompt complaint instruction. *See id*. at 668. "Where no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrongdoing, particularly where the person involved is in a position of confidence." *Commonwealth v. Snoke*, 580 A.2d 295, 299 (Pa. 1990). With

- 7 -

the exception of [Hatcher's] rape of R.S., [Hatcher] did not use force against L.R., R.S., and P.R.

Factors for the trial court to consider to determine whether a minor victim may have a legitimate reason for delay in complaining include the following: the age of the victim; the mental and physical condition of the victim; the atmosphere and physical setting in which the incidents were alleged to have taken place; the extent to which the accused may have been in a position of authority, domination, or custodial control over the victim; and whether the victim was under duress. *See Commonwealth v. Ables*, 590 A.2d 334, 340 (Pa. Super. 1991).

Trial Court Opinion, 11/22/24, at 14-15 (footnote and record citations omitted, citation format regularized). The trial court then applied the law to the facts of the case, explaining:

[L].R. was 15 years old when [Hatcher] assaulted her; R.S. was approximately 13; and P.R. was 6 and 7 (the assaults of P.R. occurred over two . . . summers). P.R. was particularly young at the time when [Hatcher] assaulted him. The assault of L.R. and the assaults of P.R. occurred in [Hatcher's] home, a place in which L.R. and P.R. were guests. The indecent assaults of R.S. occurred in her house before [Hatcher] drove her to school. The rape of R.S. occurred in a house in Philadelphia owned by the church in which [Hatcher] served as pastor. Clearly, [Hatcher] was in a position of authority in relation to P.R., L.R., and R.S. as: (1) he was a well-known pastor and prominent figure in Philadelphia; (2) he is L.R.'s uncle and P.R.'s great-uncle; and (3) he was R.S.'s pastor and very close to her mother, who also attended his church. Moreover, during the time of the assaults described in this [o]pinion, [Hatcher] exercised control over them as several of the assaults occurred in his house or, with respect to the rape of R.S. . . ., in a house owned by the church that he led.

In *Sandusky*, *supra*, the Superior Court held, *inter alia*, that the trial court was required to evaluate the appropriateness of requested prompt complaint instruction with respect to the age and maturity of each alleged victim.

In the case *sub judice*, after considering the evidence that had been presented during trial, the [trial c]ourt informed counsel

during its charging conference that it would not give the prompt complaint jury instruction:

* * * * *

the gist of all th[e] case law is that the trial court has to use [its] discretion based on the facts of the case and under all the circumstances as to whether or not a prompt complaint charge is appropriate under the circumstances. And there's really two pretty significant requirements, or items, that they look at in [the cited] cases.

In all of these cases the trial judge determined not to charge the jury on prompt complaint. In all of them it was because the victims were of a tender age and because the defendant was in a position of authority, domination, or custodial control over the victim. They're kind of the two major factors that the courts were told to look at in deciding whether to give this prompt complaint charge.

***Sandusky***[, ***supra***], of course, involved eight victims. And the delays in reporting in Sandusky were 16 years, 14 years, 13 years, 12 years, 10 years, six years, and about two years, so they're significant delays, and the court in ***Sandusky*** did not give the prompt complaint charge.

So [the court is] leaning towards not [giving the instruction], but I certainly want to give the defense an opportunity to look at all of those cases, but I just wanted to give you a heads-up that that seems to be where the law is guiding me. [The court] think[s] it's pretty clear in this case that one victim [P.R.] was six or seven years old, the other victim [R.S.] was 12 to 13 years old, and the oldest [L.R.] was 15 or maybe 16 at the time. And clearly the defendant was a pastor, an uncle, and so clearly in a position of authority or domination or custodial control.

* * * * *

> As demonstrated from the discussion above, the [the trial c]ourt carefully considered the factual circumstances of this case in deciding that a prompt complaint instruction was not proper in this case.

*Id*. at 15-17 (footnote and record citations omitted, citation format regularized).

After a thorough review of the record, the trial court opinion and the relevant cases, we discern no error of law or abuse of discretion in the trial court's decision. *See Ables*, 590 A.2d at 340-41 (affirming trial court's denial of request for a prompt complaint instruction where the trial court considered the appropriate factors). Hatcher does not point to any error of law but instead seeks to have us reweigh the evidence and the factors and decide them in his favor. *See* Hatcher's Brief at 16-21. This we cannot do. *See Commonwealth v. Aumick*, 297 A.3d 770, 783 (Pa. Super. 2023) (*en banc*). Hatcher's issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/5/2025

- 10 -

J-S23033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MARK HATCHER :
:
Appellant : No. 2282 EDA 2024

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003325-2022

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED SEPTEMBER 5, 2025**

Mark Hatcher ("Hatcher") appeals from the judgment of sentence imposed following his jury convictions for one count each of rape, statutory sexual assault, sexual assault, and indecent assault without consent of another, as well as three counts each of indecent assault of persons under thirteen and under sixteen.[1] On appeal, Hatcher claims the trial court erred in failing to give a prompt complaint instruction to the jury and that two of the counts of indecent assault of a person under thirteen were improperly graded as third-degree felonies. Because Hatcher's claims are either waived or do not merit relief, we affirm.

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3122.1, 3124.1, 3126(a)(1), 3126(a)(7), 3126(a)(8).

We take the underlying facts and procedural history in this matter from the trial court's opinion and our review of the certified record. Hatcher is a prominent Philadelphia pastor. *See* Trial Court Opinion, 11/22/24, at 4. In 2000, Hatcher's niece, L.R., then aged fifteen, was living with Hatcher and his family during the school year. *See id*. at 4. In December 2000, Hatcher was home alone with L.R. and walked into her room wearing only a robe. *See id*. He began to talk to her and at some point, Hatcher lay on L.R.'s bed and exposed his naked body to her. *See id*. at 5. Hatcher then moved behind L.R. and began to grope her breasts, causing L.R. to freeze in fear. *See id*. Hatcher asked L.R. if he was making her uncomfortable and when she agreed, ceased the assault. *See id*. The next day, an extremely upset L.R. disclosed the event to her mother; because she did not want to cause a family crisis, L.R. stayed at Hatcher's home for a few more weeks and did not go to the police. *See id*.

In 2005 and/or 2006, the then twelve- or thirteen-year-old R.S., the daughter of a very close friend and congregant of Hatcher, would sometimes stay at Hatcher's home overnight, or Hatcher would stay at her mother's house. *See id*. at 5-6. On one occasion while the two were sitting together, Hatcher hugged R.S., pulled her on top of him, kissed her on the mouth, and groped her breasts. *See id*. at 6. Another time, R.S. lay on the floor pretending to sleep and Hatcher again touched her breasts and sucked on her nipples. *See id*. In 2006, Hatcher took R.S. to dinner in New Jersey. As they

drove home, Hatcher stopped at a house in Philadelphia which his church owned, saying he needed to check the lighting. *See id*. Hatcher brought R.S. into the house and took her upstairs to a room with a mattress lying on the floor. *See id* at 6-7. Hatcher pulled R.S. onto the mattress, pulled down her pants and penetrated her vagina with his penis. *See id*. Hatcher then abruptly stopped and said he was saving R.S. for her husband. *See id*. Approximately two years later, R.S. disclosed the incident to her parents and gave a statement to the police. However, the Philadelphia District Attorney's Office declined to prosecute because R.S.'s parents would not agree to a rape kit. *See id*.

In the summers of 2007 and 2008, Hatcher's then six- or seven-year-old great-nephew, P.R., would frequently stay at Hatcher's home. *See id*. at 7-8. On multiple occasions during the two summers, Hatcher pulled down P.R.'s pants, touched P.R.'s buttocks and penis, kissed him on the mouth, and, on one occasion, Hatcher made P.R. masturbate him until he ejaculated. *See id*. at 8-9. P.R. did not disclose the incidents. *See id*.

In 2021, P.R. disclosed the abuse to his mother, who told several family members about the incidents. *See id*. at 9-10. L.R. learned about the abuse of P.R. from a family member; ultimately, the Whitpain Police Department investigated the abuse. *See id*. at 10. The Commonwealth charged Hatcher, and a jury convicted him of the aforementioned charges. In August 2024, the trial court found Hatcher to be a sexually violent predator

and sentenced him to an aggregate sentence of five years and three months to twelve years in prison to be followed by three years of probation. This appeal followed.[2]

Hatcher raises two issues for our review:

[I.] Whether the trial court imposed an illegal sentence by grading two indecent assault convictions as third-degree felonies, where there was no evidence showing that [] Hatcher engaged in a course of conduct of abuse, as required for elevating the grades of the offenses under 18 Pa.C.S.A. § 3126(b)(3)(ii)[?]

[II.] Whether the trial court abused its discretion by denying [] Hatcher's request for a prompt complaint jury instruction, where most complainants waited more than a decade to report the incidents[?]

Hatcher's Brief at 3 (citation format regularized).

In his first issue, Hatcher contends the trial court imposed an illegal sentence because the evidence was not sufficient to establish a course of conduct **on counts seven and eight**, indecent assault of a person under age thirteen as required to grade indecent assault as a felony. **See** 18 Pa.C.S.A. § 3126(b)(3)(ii); Hatcher's Brief at 11-16. **See also Commonwealth v. Sanchez**, 848 A.2d 977, 986 (Pa. Super. 2004) (holding a claim the trial court improperly graded an offense raises a challenge to the legality of sentence).

This Court is not required to accept an appellant's framing of an issue as a challenge to the legality of sentence; rather we are "to carefully scrutinize the substance of . . . purported non-waivable claims to ascertain whether the

_____

[2] Hatcher and the trial court complied with Pa.R.A.P. 1925.

actual nature of the challenge is to the sentence or the conviction." ***Interest of D.P.***, 233 A.3d 847, 851 (Pa. Super. 2020).

Our review of Hatcher's brief demonstrates he challenges the sufficiency of the evidence supporting his ***conviction*** of indecent assault as a felony, not his sentence. ***See*** Hatcher's Brief at 11-16. Hatcher never mentions the sentence but instead discusses, in the light most favorable to himself, why the evidence was not sufficient to demonstrate a course of conduct. ***See id***. ***See also D.P.***, 233 A.3d at 851-52 (concluding purported challenge to the legality of sentence was a challenge to the sufficiency of the evidence where appellant never discussed the dispositional order or its legality but rather whether sufficient evidence supported adjudication of indecent assault as a third-degree felony arising from a course of conduct).

Hatcher waived his sufficiency claim. Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***see also Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in* ***Commonwealth v. Burton***, 973 A.2d 428, 431 (Pa. Super. 2009) (*en banc*). In his Rule 1925(b) statement, Hatcher raised a course of conduct challenge to count six, not counts seven and eight. ***See*** Statement of Matters Complained of on Appeal, 9/18/24, at 2 (unnumbered). Thus, in its 1925(a) opinion, the trial court only discussed a challenge to the sufficiency of the

evidence underlying count six. *See* Trial Court Opinion, 11/22/24, at 17-19. There was no reason, given the specificity of the Rule 1925(b) statement, for the trial court to conclude that, despite his assertion to the contrary, Hatcher was challenging the sufficiency of the evidence with respect to counts seven and eight rather than count six. Thus, Hatcher waived his challenge to the sufficiency of the evidence underlying counts seven and eight.

In his second and final claim, Hatcher complains the trial court erred in denying his request for a prompt complaint instruction to the jury. *See* Hatcher's Brief at 16-21. Pertinently:

> In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. A trial court has broad discretion in phrasing its instructions[] and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Moreover, it is well[] settled that the trial court has wide discretion in fashioning jury instructions. ***The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.***

*Commonwealth v. Williams*, 176 A.3d 298, 314 (Pa. Super. 2017) (quotation marks, citations, and brackets omitted, emphasis added).

Furthermore:

> Defendants are generally entitled to instructions that they have requested and ***that are supported by the evidence***. Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record. . . .[A] trial court shall only instruct on an offense where the offense has been made an issue

- 6 -

in the case and where the trial evidence reasonably would support such a verdict. We have explained that the reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. A criminal defendant must, therefore establish that the trial evidence would reasonably support a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial.

**Commonwealth v. Hairston**, 84 A.3d 657, 668 (Pa. 2014) (internal citations and quotation marks omitted, emphasis added).

Hatcher complains the victims unreasonably and without explanation delayed reporting the abuse, and therefore he was entitled to a prompt complaint charge. **See** Hatcher's Brief at 16. Hatcher maintains the lack of prompt complaints in the instant matter raises doubt regarding whether the victims fabricated the complaints or were acts of revenge. **See id**. at 17.

The trial court disagreed, accurately stating the law with respect to prompt complaint instructions:

> The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. **See Commonwealth v. Thomas**, 904 A.2d 964, 970 (Pa. Super. 2006). This is especially true where the perpetrator is one with authority or custodial control over the victim. **See id**. (citation omitted). There is no policy in Pennsylvania jurisprudence that the prompt complaint instruction be given in every case. **See Commonwealth v. Sandusky**, 77 A.3d 663, 667 (Pa. Super. 2013). The fact of a lengthy delay prior to the victim's complaint of sexual abuse does not alone justify the prompt complaint instruction. **See id**. at 668. "Where no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrongdoing, particularly where the person involved is in a position of confidence." **Commonwealth v. Snoke**, 580 A.2d 295, 299 (Pa. 1990). With

the exception of [Hatcher's] rape of R.S., [Hatcher] did not use force against L.R., R.S., and P.R.

Factors for the trial court to consider to determine whether a minor victim may have a legitimate reason for delay in complaining include the following: the age of the victim; the mental and physical condition of the victim; the atmosphere and physical setting in which the incidents were alleged to have taken place; the extent to which the accused may have been in a position of authority, domination, or custodial control over the victim; and whether the victim was under duress. ***See Commonwealth v. Ables***, 590 A.2d 334, 340 (Pa. Super. 1991).

Trial Court Opinion, 11/22/24, at 14-15 (footnote and record citations omitted, citation format regularized). The trial court then applied the law to the facts of the case, explaining:

[L].R. was 15 years old when [Hatcher] assaulted her; R.S. was approximately 13; and P.R. was 6 and 7 (the assaults of P.R. occurred over two . . . summers). P.R. was particularly young at the time when [Hatcher] assaulted him. The assault of L.R. and the assaults of P.R. occurred in [Hatcher's] home, a place in which L.R. and P.R. were guests. The indecent assaults of R.S. occurred in her house before [Hatcher] drove her to school. The rape of R.S. occurred in a house in Philadelphia owned by the church in which [Hatcher] served as pastor. Clearly, [Hatcher] was in a position of authority in relation to P.R., L.R., and R.S. as: (1) he was a well-known pastor and prominent figure in Philadelphia; (2) he is L.R.'s uncle and P.R.'s great-uncle; and (3) he was R.S.'s pastor and very close to her mother, who also attended his church. Moreover, during the time of the assaults described in this [o]pinion, [Hatcher] exercised control over them as several of the assaults occurred in his house or, with respect to the rape of R.S. . . ., in a house owned by the church that he led.

In ***Sandusky***, ***supra***, the Superior Court held, *inter alia*, that the trial court was required to evaluate the appropriateness of requested prompt complaint instruction with respect to the age and maturity of each alleged victim.

In the case *sub judice*, after considering the evidence that had been presented during trial, the [trial c]ourt informed counsel

during its charging conference that it would not give the prompt complaint jury instruction:

* * * * *

the gist of all th[e] case law is that the trial court has to use [its] discretion based on the facts of the case and under all the circumstances as to whether or not a prompt complaint charge is appropriate under the circumstances. And there's really two pretty significant requirements, or items, that they look at in [the cited] cases.

In all of these cases the trial judge determined not to charge the jury on prompt complaint. In all of them it was because the victims were of a tender age and because the defendant was in a position of authority, domination, or custodial control over the victim. They're kind of the two major factors that the courts were told to look at in deciding whether to give this prompt complaint charge.

***Sandusky***[, ***supra***], of course, involved eight victims. And the delays in reporting in Sandusky were 16 years, 14 years, 13 years, 12 years, 10 years, six years, and about two years, so they're significant delays, and the court in ***Sandusky*** did not give the prompt complaint charge.

So [the court is] leaning towards not [giving the instruction], but I certainly want to give the defense an opportunity to look at all of those cases, but I just wanted to give you a heads-up that that seems to be where the law is guiding me. [The court] think[s] it's pretty clear in this case that one victim [P.R.] was six or seven years old, the other victim [R.S.] was 12 to 13 years old, and the oldest [L.R.] was 15 or maybe 16 at the time. And clearly the defendant was a pastor, an uncle, and so clearly in a position of authority or domination or custodial control.

* * * * *

> As demonstrated from the discussion above, the [the trial c]ourt carefully considered the factual circumstances of this case in deciding that a prompt complaint instruction was not proper in this case.

*Id*. at 15-17 (footnote and record citations omitted, citation format regularized).

After a thorough review of the record, the trial court opinion and the relevant cases, we discern no error of law or abuse of discretion in the trial court's decision. *See Ables*, 590 A.2d at 340-41 (affirming trial court's denial of request for a prompt complaint instruction where the trial court considered the appropriate factors). Hatcher does not point to any error of law but instead seeks to have us reweigh the evidence and the factors and decide them in his favor. *See* Hatcher's Brief at 16-21. This we cannot do. *See Commonwealth v. Aumick*, 297 A.3d 770, 783 (Pa. Super. 2023) (*en banc*). Hatcher's issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/5/2025

- 10 -

J-S23033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                    :          PENNSYLVANIA
                         :
          v.                    :
                         :
                         :
MARK HATCHER                 :
                         :
          Appellant       :     No. 2282 EDA 2024

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0003325-2022

BEFORE:  STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:        **FILED SEPTEMBER 5, 2025**

Mark Hatcher ("Hatcher") appeals from the judgment of sentence imposed following his jury convictions for one count each of rape, statutory sexual assault, sexual assault, and indecent assault without consent of another, as well as three counts each of indecent assault of persons under thirteen and under sixteen.[1]  On appeal, Hatcher claims the trial court erred in failing to give a prompt complaint instruction to the jury and that two of the counts of indecent assault of a person under thirteen were improperly graded as third-degree felonies.  Because Hatcher's claims are either waived or do not merit relief, we affirm.

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3122.1, 3124.1, 3126(a)(1), 3126(a)(7), 3126(a)(8).

We take the underlying facts and procedural history in this matter from the trial court's opinion and our review of the certified record. Hatcher is a prominent Philadelphia pastor. *See* Trial Court Opinion, 11/22/24, at 4. In 2000, Hatcher's niece, L.R., then aged fifteen, was living with Hatcher and his family during the school year. *See id*. at 4. In December 2000, Hatcher was home alone with L.R. and walked into her room wearing only a robe. *See id*. He began to talk to her and at some point, Hatcher lay on L.R.'s bed and exposed his naked body to her. *See id*. at 5. Hatcher then moved behind L.R. and began to grope her breasts, causing L.R. to freeze in fear. *See id*. Hatcher asked L.R. if he was making her uncomfortable and when she agreed, ceased the assault. *See id*. The next day, an extremely upset L.R. disclosed the event to her mother; because she did not want to cause a family crisis, L.R. stayed at Hatcher's home for a few more weeks and did not go to the police. *See id*.

In 2005 and/or 2006, the then twelve- or thirteen-year-old R.S., the daughter of a very close friend and congregant of Hatcher, would sometimes stay at Hatcher's home overnight, or Hatcher would stay at her mother's house. *See id*. at 5-6. On one occasion while the two were sitting together, Hatcher hugged R.S., pulled her on top of him, kissed her on the mouth, and groped her breasts. *See id*. at 6. Another time, R.S. lay on the floor pretending to sleep and Hatcher again touched her breasts and sucked on her nipples. *See id*. In 2006, Hatcher took R.S. to dinner in New Jersey. As they

drove home, Hatcher stopped at a house in Philadelphia which his church owned, saying he needed to check the lighting. *See id*. Hatcher brought R.S. into the house and took her upstairs to a room with a mattress lying on the floor. *See id* at 6-7. Hatcher pulled R.S. onto the mattress, pulled down her pants and penetrated her vagina with his penis. *See id*. Hatcher then abruptly stopped and said he was saving R.S. for her husband. *See id*. Approximately two years later, R.S. disclosed the incident to her parents and gave a statement to the police. However, the Philadelphia District Attorney's Office declined to prosecute because R.S.'s parents would not agree to a rape kit. *See id*.

In the summers of 2007 and 2008, Hatcher's then six- or seven-year-old great-nephew, P.R., would frequently stay at Hatcher's home. *See id*. at 7-8. On multiple occasions during the two summers, Hatcher pulled down P.R.'s pants, touched P.R.'s buttocks and penis, kissed him on the mouth, and, on one occasion, Hatcher made P.R. masturbate him until he ejaculated. *See id*. at 8-9. P.R. did not disclose the incidents. *See id*.

In 2021, P.R. disclosed the abuse to his mother, who told several family members about the incidents. *See id*. at 9-10. L.R. learned about the abuse of P.R. from a family member; ultimately, the Whitpain Police Department investigated the abuse. *See id*. at 10. The Commonwealth charged Hatcher, and a jury convicted him of the aforementioned charges. In August 2024, the trial court found Hatcher to be a sexually violent predator

and sentenced him to an aggregate sentence of five years and three months to twelve years in prison to be followed by three years of probation. This appeal followed.[2]

Hatcher raises two issues for our review:

[I.] Whether the trial court imposed an illegal sentence by grading two indecent assault convictions as third-degree felonies, where there was no evidence showing that [] Hatcher engaged in a course of conduct of abuse, as required for elevating the grades of the offenses under 18 Pa.C.S.A. § 3126(b)(3)(ii)[?]

[II.] Whether the trial court abused its discretion by denying [] Hatcher's request for a prompt complaint jury instruction, where most complainants waited more than a decade to report the incidents[?]

Hatcher's Brief at 3 (citation format regularized).

In his first issue, Hatcher contends the trial court imposed an illegal sentence because the evidence was not sufficient to establish a course of conduct **on counts seven and eight**, indecent assault of a person under age thirteen as required to grade indecent assault as a felony. **See** 18 Pa.C.S.A. § 3126(b)(3)(ii); Hatcher's Brief at 11-16. **See also Commonwealth v. Sanchez**, 848 A.2d 977, 986 (Pa. Super. 2004) (holding a claim the trial court improperly graded an offense raises a challenge to the legality of sentence).

This Court is not required to accept an appellant's framing of an issue as a challenge to the legality of sentence; rather we are "to carefully scrutinize the substance of . . . purported non-waivable claims to ascertain whether the

_____

[2] Hatcher and the trial court complied with Pa.R.A.P. 1925.

actual nature of the challenge is to the sentence or the conviction." ***Interest of D.P.***, 233 A.3d 847, 851 (Pa. Super. 2020).

Our review of Hatcher's brief demonstrates he challenges the sufficiency of the evidence supporting his ***conviction*** of indecent assault as a felony, not his sentence. ***See*** Hatcher's Brief at 11-16. Hatcher never mentions the sentence but instead discusses, in the light most favorable to himself, why the evidence was not sufficient to demonstrate a course of conduct. ***See id***. ***See also D.P.***, 233 A.3d at 851-52 (concluding purported challenge to the legality of sentence was a challenge to the sufficiency of the evidence where appellant never discussed the dispositional order or its legality but rather whether sufficient evidence supported adjudication of indecent assault as a third-degree felony arising from a course of conduct).

Hatcher waived his sufficiency claim. Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***see also Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in* ***Commonwealth v. Burton***, 973 A.2d 428, 431 (Pa. Super. 2009) (*en banc*). In his Rule 1925(b) statement, Hatcher raised a course of conduct challenge to count six, not counts seven and eight. ***See*** Statement of Matters Complained of on Appeal, 9/18/24, at 2 (unnumbered). Thus, in its 1925(a) opinion, the trial court only discussed a challenge to the sufficiency of the

evidence underlying count six. *See* Trial Court Opinion, 11/22/24, at 17-19.

There was no reason, given the specificity of the Rule 1925(b) statement, for

the trial court to conclude that, despite his assertion to the contrary, Hatcher

was challenging the sufficiency of the evidence with respect to counts seven

and eight rather than count six. Thus, Hatcher waived his challenge to the

sufficiency of the evidence underlying counts seven and eight.

In his second and final claim, Hatcher complains the trial court erred in

denying his request for a prompt complaint instruction to the jury. *See*

Hatcher's Brief at 16-21. Pertinently:

> In reviewing a jury charge, we determine whether the trial court
> committed a clear abuse of discretion or an error of law which
> controlled the outcome of the case. We must view the charge as
> a whole; the trial court is free to use its own form of expression
> in creating the charge. A trial court has broad discretion in
> phrasing its instructions[] and may choose its own wording so long
> as the law is clearly, adequately, and accurately presented to the
> jury for its consideration. Moreover, it is well[] settled that the
> trial court has wide discretion in fashioning jury instructions. ***The
> trial court is not required to give every charge that is
> requested by the parties and its refusal to give a requested
> charge does not require reversal unless the appellant was
> prejudiced by that refusal.***

*Commonwealth v. Williams*, 176 A.3d 298, 314 (Pa. Super. 2017)

(quotation marks, citations, and brackets omitted, emphasis added).

Furthermore:

> Defendants are generally entitled to instructions that they have
> requested and ***that are supported by the evidence***. Where a
> defendant requests a jury instruction on a defense, the trial court
> may not refuse to instruct the jury regarding the defense if it is
> supported by evidence in the record. . . .[A] trial court shall only
> instruct on an offense where the offense has been made an issue

- 6 -

in the case and where the trial evidence reasonably would support such a verdict. We have explained that the reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. A criminal defendant must, therefore establish that the trial evidence would reasonably support a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial.

*Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014) (internal citations and quotation marks omitted, emphasis added).

Hatcher complains the victims unreasonably and without explanation delayed reporting the abuse, and therefore he was entitled to a prompt complaint charge. *See* Hatcher's Brief at 16. Hatcher maintains the lack of prompt complaints in the instant matter raises doubt regarding whether the victims fabricated the complaints or were acts of revenge. *See id*. at 17.

The trial court disagreed, accurately stating the law with respect to prompt complaint instructions:

> The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. *See Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006). This is especially true where the perpetrator is one with authority or custodial control over the victim. *See id*. (citation omitted). There is no policy in Pennsylvania jurisprudence that the prompt complaint instruction be given in every case. *See Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013). The fact of a lengthy delay prior to the victim's complaint of sexual abuse does not alone justify the prompt complaint instruction. *See id*. at 668. "Where no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrongdoing, particularly where the person involved is in a position of confidence." *Commonwealth v. Snoke*, 580 A.2d 295, 299 (Pa. 1990). With

- 7 -

the exception of [Hatcher's] rape of R.S., [Hatcher] did not use force against L.R., R.S., and P.R.

Factors for the trial court to consider to determine whether a minor victim may have a legitimate reason for delay in complaining include the following: the age of the victim; the mental and physical condition of the victim; the atmosphere and physical setting in which the incidents were alleged to have taken place; the extent to which the accused may have been in a position of authority, domination, or custodial control over the victim; and whether the victim was under duress. ***See Commonwealth v. Ables***, 590 A.2d 334, 340 (Pa. Super. 1991).

Trial Court Opinion, 11/22/24, at 14-15 (footnote and record citations omitted, citation format regularized). The trial court then applied the law to the facts of the case, explaining:

[L].R. was 15 years old when [Hatcher] assaulted her; R.S. was approximately 13; and P.R. was 6 and 7 (the assaults of P.R. occurred over two . . . summers). P.R. was particularly young at the time when [Hatcher] assaulted him. The assault of L.R. and the assaults of P.R. occurred in [Hatcher's] home, a place in which L.R. and P.R. were guests. The indecent assaults of R.S. occurred in her house before [Hatcher] drove her to school. The rape of R.S. occurred in a house in Philadelphia owned by the church in which [Hatcher] served as pastor. Clearly, [Hatcher] was in a position of authority in relation to P.R., L.R., and R.S. as: (1) he was a well-known pastor and prominent figure in Philadelphia; (2) he is L.R.'s uncle and P.R.'s great-uncle; and (3) he was R.S.'s pastor and very close to her mother, who also attended his church. Moreover, during the time of the assaults described in this [o]pinion, [Hatcher] exercised control over them as several of the assaults occurred in his house or, with respect to the rape of R.S. . . ., in a house owned by the church that he led.

In ***Sandusky***, ***supra***, the Superior Court held, *inter alia*, that the trial court was required to evaluate the appropriateness of requested prompt complaint instruction with respect to the age and maturity of each alleged victim.

In the case *sub judice*, after considering the evidence that had been presented during trial, the [trial c]ourt informed counsel

during its charging conference that it would not give the prompt complaint jury instruction:

\* \* \* \* \*

the gist of all th[e] case law is that the trial court has to use [its] discretion based on the facts of the case and under all the circumstances as to whether or not a prompt complaint charge is appropriate under the circumstances. And there's really two pretty significant requirements, or items, that they look at in [the cited] cases.

In all of these cases the trial judge determined not to charge the jury on prompt complaint. In all of them it was because the victims were of a tender age and because the defendant was in a position of authority, domination, or custodial control over the victim. They're kind of the two major factors that the courts were told to look at in deciding whether to give this prompt complaint charge.

***Sandusky***[, ***supra***], of course, involved eight victims. And the delays in reporting in Sandusky were 16 years, 14 years, 13 years, 12 years, 10 years, six years, and about two years, so they're significant delays, and the court in ***Sandusky*** did not give the prompt complaint charge.

So [the court is] leaning towards not [giving the instruction], but I certainly want to give the defense an opportunity to look at all of those cases, but I just wanted to give you a heads-up that that seems to be where the law is guiding me. [The court] think[s] it's pretty clear in this case that one victim [P.R.] was six or seven years old, the other victim [R.S.] was 12 to 13 years old, and the oldest [L.R.] was 15 or maybe 16 at the time. And clearly the defendant was a pastor, an uncle, and so clearly in a position of authority or domination or custodial control.

\* \* \* \* \*

> As demonstrated from the discussion above, the [the trial c]ourt carefully considered the factual circumstances of this case in deciding that a prompt complaint instruction was not proper in this case.

*Id*. at 15-17 (footnote and record citations omitted, citation format regularized).

After a thorough review of the record, the trial court opinion and the relevant cases, we discern no error of law or abuse of discretion in the trial court's decision. *See Ables*, 590 A.2d at 340-41 (affirming trial court's denial of request for a prompt complaint instruction where the trial court considered the appropriate factors). Hatcher does not point to any error of law but instead seeks to have us reweigh the evidence and the factors and decide them in his favor. *See* Hatcher's Brief at 16-21. This we cannot do. *See Commonwealth v. Aumick*, 297 A.3d 770, 783 (Pa. Super. 2023) (*en banc*). Hatcher's issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/5/2025

- 10 -