J-A08028-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LUIS MIGUEL AGUILAR DIRCIO | : | |
| | : | |
| Appellant | : | No. 2637 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 23, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002278-2021

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 26, 2026**

Appellant, Luis Miguel Aguilar Dircio, appeals from the judgment of sentence entered in the Court of Common Pleas of Chester County after a jury found him guilty of numerous offenses stemming from his sexual abuse of a child.  We affirm.

The trial court opinion aptly sets forth the relevant facts and procedural history.

> On April 8, 2021, minor victim D.A. (10 years old at the time) disclosed to her older sister that Appellant was sexually abusing her.  The next day, her sister brought her to the Chester County Justice Center.  [D.A.] spoke with Detective Nieves, who conducted a forensic interview.  During the interview, D.A. told him that Appellant, whom she referred to as her stepfather, began sexually abusing her twelve (12) days after she arrived in the United States from Honduras.  After her mother left for work, he touched her breasts and vagina on at least seven (7) different occasions from April 2018 until April 2021.  He also sent her

---

[*] Former Justice specially assigned to the Superior Court.

images of his penis at least two (2) times through the "WhatsApp" application on her cell phone. He threatened to kill her father if she told anyone.

Following the interview, police arrested Appellant at his place of business. He was brought to the West Goshen Police Station, where he was interviewed by Detective Nieves. At first, he denied all wrongdoing[] but then admitted to sending D.A. pictures of penises. He stated that he sent her pictures of male genitalia five (5) or six (6) times, but only two (2) of those images were of his penis. He also initially denied touching her, but then admitted to fondling her breasts and vagina at least five (5) or six (6) times. He also stated that he penetrated her vagina with his finger on two (2) occasions.

As a result of the above, Appellant was charged with Aggravated Indecent Assault, Criminal Use of Communication Facility, Endangering Welfare of Children, Indecent Assault, Corruption of Minors and Unlawful Contact with Minor. On April 12, 2023, following a jury trial, he was found guilty of five (5) counts of Aggravated Indecent Assault and one (1) count each of Criminal Use of a Communication Facility, Endangering Welfare of Children Indecent Assault, Corruption of Minors, and Unlawful Contact with Minor. He was thereafter found to be a Sexually Violent Predator, and on August 23, 2023, he was sentenced to an aggregate 25-50 years of incarceration.

Appellant thereafter filed a Notice of Appeal on October 5, 2023. On October 6, 2023, Appellant was ordered to file a Concise Statement of Matters Complained of on Appeal. On October 17, 20223, he filed a Motion for Extension of Time to file his Concise Statement. On October 18, 2023, the trial court granted him an extension of 21 days from when all transcripts are received to file his Concise Statement. After a delay in receiving all necessary transcripts, Appellant filed his Concise Statement on March 11, 2025.

Trial Court Opinion, 8/7/25.

From the nine issues Appellant raised in his Rule 1925(b) statement, he raises and develops in his appellate brief the following five:

1. Did the trial court err by denying Appellant's motion to suppress the search of his cell phone where his consent was not knowing or intelligent?

2. Did the trial court abuse its discretion by allowing the Commonwealth to present evidence that Appellant paid for D.A. and her family to be brought to the United States because the relevance, if any, was outweighed by the danger of unfair prejudice?

3. Did the trial court commit an abuse of discretion by denying Appellant's motion in limine to preclude the Commonwealth from referring to the complaining witness as a "victim?"

4. Did the trial court err by denying Appellant's request to instruct the jury on D.A.'s failure to make a prompt complaint?

5. Did the trial court commit an abuse of discretion by failing to consider Appellant's rehabilitative needs at sentencing?

Brief of Appellant at 5.

In Appellant's first issue, he contends the trial court erroneously denied his motion to suppress evidence obtained from the warrantless search of his cell phone. Our standard of review is well-established:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre[ ]trial motion to suppress.

***Commonwealth v. Carey***, 249 A.3d 1217, 1223 (Pa. Super. 2021) (citation omitted).

"[T]he Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures." ***Commonwealth v. Jones-Williams***, 279 A.3d 508, 515 (Pa. 2022). A warrantless search "is presumptively unreasonable" unless it falls under one of "a few specifically established, well-delineated exceptions" to the warrant requirement. ***Commonwealth v. Saunders***, 326 A.3d 888, 896 (Pa. 2024) (citations omitted). Among these exceptions are consent searches. ***Id***. (***citing Commonwealth v. Wilmer***, 194 A.3d 564, 568 (cleaned up)).

Specifically, Appellant maintains he cannot be held to have consented to the search when Detective Nieves, in seeking his permission to "check" his phone to confirm communications with his family members, failed to provide him with sufficient notice of both the scope of the intended search and the rights he was giving up. Brief of Appellant at 27-32.

Appellant denies that his receipt of a Spanish language written consent form, which he read and signed prior to Detective Nieves commencing the search, made his consent to the search knowing and intelligent. Moreover, he contends the Commonwealth did not meet its burden to prove that the contents of the consent form sufficiently advised him of his rights because it

- 4 -

failed to enter an English language version of the form into evidence at the suppression hearing.

The Commonwealth responds that this issue as presented in his brief differs substantively from the issue he raised in both his suppression motion and Pa.R.A.P. 1925(a) concise statement and is, therefore, waived. Specifically, it argues Appellant failed to assert in his suppression motion and concise statement that the detective failed to place him on notice of the *scope* of the search to be conducted on his phone. Brief of Appellee at 19.

In the alternative, the Commonwealth argues, Appellant's issue fails on the merits because "a typical reasonable person would have understood that the scope of the search would be comprehensive . . . [b]ased on the statements made by the detective[.]" In this respect, the Commonwealth deems it noteworthy that Appellant was a high school graduate and attended college for one year. The Commonwealth's position, therefore, is that Detective Nieves only did what he informed Appellant, both verbally and through the form, he would do, which is search the contents of Appellant's phone.

The trial court observes in its Suppression Order and Opinion of February 24, 2022, which denied Appellant's motion to suppress, that the record supported the detective's testimony that Appellant confirmed stated at the outset that he knew why the detective wanted to speak with him and that he was able to understand the detective throughout the interview, including the

review and signing of the **Miranda**[1] rights form and the form permitting the search of his cellphone:

> In this case, the interview of defendant [hereinafter, "Appellant"] was videotaped, and a DVD and transcript of the interview was introduced at the hearing. Detective David Nieves, Jr. and Detective Jose Torres of the Chester County Detective's Office were present for the interview. The interview was conducted by Detective Nieves, who is fluent in Spanish, and the entire interview was done in Spanish. Defendant was advised of his Miranda rights by Detective Nieves. The written **Miranda** Waiver Form and the written Consent to Search Appellant's phone were both in Spanish.
>
> Despite Appellant's clear waiver of his **Miranda** rights, Appellant claims his waiver was not knowing, intelligent and voluntary. As stated above, Detective Nieves is fluent in Spanish. He provided a written Waiver Form to Appellant that was in Spanish. He also read the Form to him in Spanish. He confirmed with Appellant that he [Appellant] knew why the police wanted to speak with him. [Detective Nieves] was able to understand Appellant, and Appellant was able to understand him.
>
> Similarly, the Consent to Search Appellant's phone was also in Spanish. After obtaining consent, Detective Nieves and Appellant had a discussion about the phone's password. It is clear that both Appellant's waiver of Miranda rights and the consent to search the phone were knowing, voluntary and intelligent.
>
> . . .
>
> In this case, Appellant is 38 years old and finished high school and one year of college. Detective Nieves was not threatening to Appellant in any way during the hour and 13 minute interview. Appellant was given a drink when he requested one. More importantly, Appellant was not threatened or promised anything to get him to confess. Based on the totality of the circumstances, the [suppression] court finds that Appellant was not given any improper inducements in order to get him to waive his Miranda

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

rights or to get him to consent to a search of his phone. To the contrary, Appellant's confession and consent were knowingly, intelligently, and voluntary.

Trial Court Order, 2/24/22, at fn. 1, pp. 2-3.

Valid consent "must be voluntarily given, and not the result of duress or coercion, express or implied." **Commonwealth v. Hunte**, 337 A.3d 483, 498 (Pa. 2025) (quoting **Schneckloth v. Bustamonte**, 412 U.S. 218, 248–49 (1973)). The Commonwealth must prove that an individual's consent was voluntary based on the totality of the circumstances. **Commonwealth v. Hawkins**, 257 A.3d 1, 9–10 (Pa. Super. 2020) (citations omitted).

Our Court, sitting *en banc*, has expounded on the totality of circumstances review required of a court's inquiry into the voluntariness of one's consent to a search:

> [A]lthough the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.
>
> Since both the tests for voluntariness and for a seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses.
>
> ... [T]he following factors outlined [in **Commonwealth v. Strickler**, 757 A.2d 884 (Pa. 2000),] are pertinent to a determination of whether consent to search is voluntarily given: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8)

- 7 -

whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

*Id*. (quoting ***Commonwealth v. Kemp***, 961 A.2d 1247, 1261 (Pa. Super. 2008) (*en banc*) (holding totality of factors supported finding that consent to search was voluntary and not the product of coercion, even if officer failed to inform subject that he could refuse consent)).

Guided by this jurisprudence, we review the record and find it reveals that Appellant filed a January 3, 2023, pretrial "Defendant's Motion to Suppress Phone Search," which stated in relevant part,

> At the beginning of the [police-citizen] interview [conducted by detectives], Dircio signs an 'Autorization [sic] Para Registrar,' however, his rights regarding the phone search were never adequately explained to [him] by detectives. A copy of the 'Autorizacion Para Registrar' is attached as Exhibit 'A'. Dircio's phone was seized and subsequently searched. . . . The search should be suppressed because Dircio did not make a knowing and intelligent waiver of his rights to privacy to Commonwealth authorities regarding the search of the phone.

Motion to Suppress, 1/3/23, at 1.

At the suppression hearing of January 13, 2023, Detective David Nieves acknowledged that at the outset of the post-arrest, stationhouse interview of Appellant he gave Appellant a Spanish language ***Miranda*** warnings form and read the form to him in Spanish, asking him to answer "yes" or "no" to questions requiring his response. N.T. 1/13/23 at 31. Appellant answered "yes'" to every question and signed the form, and in doing so he waived his ***Miranda*** rights.

Detective Nieves testified that he asked if Appellant knew why the police wished to speak to him, and Appellant answered in the affirmative. N.T. at 32. The detective confirmed that the interview was conducted in Spanish, and he described Appellant as "very cooperative" and, at times, "jovial" during an interview that, in the detective's opinion, maintained a "conversational" tone without any confrontational moments. N.T. at 34-35.

The detective testified that during this interview he asked Appellant to review a Spanish language form discussing his rights related to a search of his cellphone and to sign the form if he would, which he did. N.T. at 32, 33. Having received consent to search the contents of the cellphone, the detective asked for the password and Appellant furnished it. The detective followed by asking again for Appellant's permission to access and look at his cellphone. Appellant, again, gave permission. N.T. at 32, 33.

The detective did not believe he asked what Appellant's level of education was, and he asserted that never during the interview did he threaten Appellant or promise anything to him in exchange for his cooperation, nor did Appellant ask for a lawyer, for a deal, or for the interview to stop. N.T. at 35-36. When asked if it would sound correct to him if the transcript indicated that Appellant reported being a high school graduate with some college attendance, Detective Nieves answered, "it could be; yes." N.T. at 38. He also stated that a birth year of 1989 reported on the Complaint aligned with his recollection. N.T. at 38.

Detective Nieves testified that they were 40 minutes into the interview when Appellant began writing his confession. N.T. at 39. During that time, Appellant had requested and received a drink, and the post-**Miranda** conversation between the two had included both what the victim reported and what Appellant admitted had occurred. N.T. at 39. Specifically, the detective testified that Appellant already had admitted to digitally penetrating the girl and he admitted sending her pictures of his penis and of other penises before any search of the cellphone commenced. Also occurring before the search of the cellphone was incriminating information received from other witnesses. N.T. at 39-40.

Even assuming *arguendo* that Appellant preserved the specific issue asserting that the scope of the cellphone search exceeded the limits of his consent, our review of the relevant record, read in light of our decisional law, leads us to conclude the suppression court properly determined that Appellant's consent to a cellphone search was voluntary and not the product of duress or coercion. Specifically, we agree with the suppression court that a reasonable person in Appellant's position, having been informed of the allegations against him and of his rights as provided both in the Spanish language Consent to Search document and Detective Nieves' conversation with him would have understood that the search of his cellphone would include both photos and conversations kept therein. Accordingly, we discern no merit to Appellant's first issue.

In Appellant's second issue, he claims the trial court erred by denying his motion *in limine* to preclude the Commonwealth from referring to the complaining witness as a "victim." Because he had maintained his innocence of the crimes charged against him, he argues, the repeated references to the complainant as a "victim" inappropriately implied that her allegations against Appellant were true and, consequently, unfairly deprived Appellant of his presumption of innocence.

In support of his position, he cites only non-precedential decisions. In **Commonwealth v. Winslow**, (non-precedential decision) 339 A.3d 409 (Pa. Super. 2025), a panel of this Court considered the Commonwealth's appeal from the trial court's order granting Defendant Winslow's motion *in limine* seeking to preclude the Commonwealth from referring to Defendant Winslow's 15-year-old niece as "the victim" during trial. Specifically, Defendant Winslow had been charged with unlawful contact, attempted indecent assault, indecent exposure, and other offenses stemming from allegations that he had entered his niece's bedroom, began to masturbate, and asked her to help him by touching his penis with her feet. Prior to trial, the trial court "concluded that it is for the jury to decide 'whether the allegations are true' and 'whether the Complaining Witness is legally a victim in this matter.'" ***Id.*** at **2.

Our panel affirmed the order not because our decisional law precludes use of the term—the panel identified no precedential decision either requiring or prohibiting the term—but because it deferred to the trial court's discretion to make the decision. In this regard, we took judicial notice of two

- 11 -

unpublished decisions[2] of this Court in which we found no abuse of discretion where the trial court had denied the defendant's pretrial motion to preclude referring to the alleged victim of criminal violence as "the victim." **Winslow**, 339 A.3d 409 at \*\*4. The **Winslow** panel noted, however, that in both cases there was no dispute that the defendant had shot and killed the decedent, and the defendant argued self-defense.

In the case *sub judice*, although Appellant contested all charges at trial, he had made a stationhouse confession to committing the charged offenses, which had survived a pretrial motion to suppress, and it was undisputed that the child complainant had received on her cell phone texts from Appellant's cell phone containing attachments of photos of his penis and other penises. While it was the burden of the Commonwealth to prove beyond a reasonable doubt that Appellant committed the inter-personal criminal acts charged, there was no question that the juvenile complainant was victimized by the transmission of pornographic images from Appellant's cell phone to her cell phone. As such, we decline to say that the trial court abused its discretion by permitting the Commonwealth to refer to the complainant as "the victim."

Appellant's third issue raises the question of whether the trial court abused its discretion by denying his motion to preclude the Commonwealth

---

[2] **Commonwealth v. Rickrode**, No. 746 MDA 2022, 2023 WL 315887 (Pa. Super. filed Jan. 19, 2023) (unpublished mem.), and **Commonwealth v. Martin**, No. 775 WDA 2020, 2021 WL 5294016 (Pa. Super. filed Nov. 15, 2021) (unpublished mem.).

from offering evidence that Mr. Dircio paid for D.A. and her family to be brought to the United States. Appellant concedes the relevance of the evidence but contends that, under Pa.R.E. 403 and 404(b), its potential for unfair prejudice outweighed its probative value because it suggested that he was engaged in other crimes, namely, sex trafficking. Brief of Appellant at 38.

The trial court denied the defense motion to exclude such evidence, ruling that it did not "necessarily imply any trafficking." Instead, the trial court explains in its Rule 1925(a) opinion that the evidence was highly relevant and probative as "part of the history of the relationship between Appellant and D.A." and explained how Appellant and her mother had come to live with Appellant. TCO at 4. Moreover, at the sentencing hearing, the trial court indicated that the evidence of Appellant's willingness to pay for the transport and housing of the then-seven-year-old girl and her mother was suggestive not of trafficking, as the defense complained, but, perhaps, simply of a plan to bring this family within his domain where he could sexually abuse the complainant D.A., consistent with what he was charged with having done, just 12 days after her arrival. *Id.*

We review a trial court's decision to admit certain evidence according to the following standard:

> [T]he admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment, but rather where

the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Wilson*, 273 A.3d 13, 19 (Pa. Super. 2022) (citation omitted).

Under Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). The evidence may, however, "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

Specifically, "[o]ther acts evidence is admissible under the *res gestae* exception where it formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts." *Commonwealth v. Carter*, 320 A.3d 140, 149 (Pa. Super. 2024). Such evidence may be admitted under Rule 404(b)(2) only "if the probative value of the evidence outweighs its potential for unfair prejudice." Thus, under Rule 404(b), evidence of prior bad acts "is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes" but "may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (citations omitted).

Here, the trial court aptly supports its ruling admitting the evidence in question because it provided essential history of the case pursuant to the *res gestae* purpose:

> When discussing this matter during pretrial proceedings, the Assistant District Attorney (hereinafter "ADA") explained:
>
>> The Commonwealth has no intention of introducing the [Appellant's] immigration status. The caselaw is clear on that. The Commonwealth expects the information regarding how the victim got to the country will come in, because the [Appellant] brought the victim to the United States. He paid money to have the victim come and she says it was only a few days after she got here that the abuse began.
>
> N.T., 4/7/23, pp. 22-23. The Commonwealth expressed a valid reason for introducing the challenged evidence. It is part of the history of the relationship between Appellant and D.A.
>
> This issue was brought up again prior to the commencement of trial. After an off-the-record discussion occurred, the court summarized the issues for the record. The court stated:
>
>> There was an issue Mr. Bloomdahl requested that we keep out the fact that Mr. Dircio had brough – had allegedly given $13,000 to get the victim's family up to here. I don't think that necessarily implies any trafficking, if the alleged assaults took place 12 days after they were brought up here. Simply, a situation we have, he's giving them money for whatever purpose. Each side can make hay regarding that.
>
> N.T., 4/10/23, p. 9. **Neither of the above two discussions occurred in front of the jury.**
>
> During opening statements, the ADA said, "You will hear how [D.A.] felt that she could not tell anyone because the defendant told her that if she told anyone he would have her father killed. You will also hear how the defendant paid $13,000 for D.A. and

her family to come to his home and the abuse started just 12 days later.  N.T., 4/11/23, pp. 22-23.

It was brought up again during Detective Nieve's testimony when he talked about the forensic interview of D.A.  The part of the interview where that topic was mentioned was played for the jury because it was the first time Appellant came up during the interview, causing D.A. to become visibly emotional and upset.  The discussion on this topic, however, was very brief.

During the interview conducted by Detective Nieves, he tried to clarify something said by D.A.  He thought she was saying that her mother paid to bring her to the United States, but she clarified that her stepfather, *i.e.*, Appellant, paid to bring her here.  At that point, D.A. got emotional and began to cry, so Detective Nieves changed the subject to make her comfortable again.  ***See*** N.T., 4/12/23.  It was important to show this to the jury, so they could see D.A.'s reaction to mentioning Appellant.

TCO at 4-5 (emphasis added).

Here, Appellant argues that this evidence was "highly prejudicial," but the trial court explains that the evidence was likewise highly probative to understanding the distinct relationship between D.A. and Appellant by providing the history between them.  Under this record, we discern no reason to have excluded this probative evidence.

In Appellant's fourth issue, he charges the trial court with erroneously failing to instruct the jury regarding D.A.'s failure to make a prompt complaint about Appellant's alleged abuse of her.  He contends such instruction was necessary because of the three-year gap between her alleged first instance of abuse at age 7 and her eventual first reporting of it at age 10.  Specifically, Appellant argues the trial court abused its discretion by relying simply on the

complainant's young age to excuse the delay instead of examining all facts related to the issue. Brief of Appellant at 42.

Our scope and standard of review regarding the failure to provide a specific jury instruction is as follows:

> When considering a trial court's failure to give a requested jury instruction, the relevant inquiry for this Court is whether such charge was warranted by the evidence in the case. Moreover, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case.
>
> If we find that the court should have included the instruction, then we must determine whether its omission prejudiced the defendant. If we determine the decision not to give an instruction was an error of law which might have prejudiced the defendant, then we must determine the error was not harmless before granting a new trial.

***Commonwealth v. Dula***, 262 A.3d 609, 635-36 (Pa. Super. 2021) (quotation marks, brackets, and citations omitted).

The specific instruction Appellant requested is Pennsylvania Suggested Standard Criminal Jury Instruction 4.13A, which provided [3]:

> 1. Before you may find the defendant guilty of the crime charged in this case, you must be convinced beyond a reasonable doubt

_____

[3] As of September 2024, the suggested standard criminal jury instruction 4.13A has been deleted from the Pennsylvania Suggested Standard Criminal Jury Instructions, and the subcommittee has specifically discouraged the use of the former instruction. Trial in this case was held in 2023; therefore, we do not consider the subsequent deletion of Suggested Standard Criminal Instruction 4.13A in our review of the trial court's decision not to provide this instruction to the jury.

that the act charged did in fact occur and that it occurred without [*name of victim*]'s consent.

2. The evidence of [*name of victim*]'s [failure to complain] [delay in making a complaint] does not necessarily make [his] [her] testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make. Therefore, the [failure to complain] [delay in making a complaint] should be considered in evaluating [his] [her] testimony in deciding whether the act occurred [at all] [with or without [his] [her] consent].

3. You must not consider [*name of victim*]'s [failure to make] [delay in making] a complaint as conclusive evidence that the act did not occur or that it did occur but with [his] [her] consent. [*Name of victim*]'s failure to complain [at all] [promptly] [and the nature of any explanation for that failure] are factors bearing on the believability of [his] [her] testimony and must be considered by you in light of all the evidence in the case.

Pa. SSJI (Crim.) § 4.13A.

This Court has explained:

The premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. However, there is no policy in our jurisprudence that the instruction be given in every case.

The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For instance, where an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication.

***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013)

(citations, quotation marks, and brackets omitted).

- 18 -

"Furthermore, in cases where the victim is a child, [our Supreme] Court commented on the importance of questioning whether the immaturity of the child occasioned the delay as opposed to a design to deceive." *Commonwealth v. Dillon*, 925 A.2d 131, 138 (Pa. 2007) (citation and internal quotation marks omitted). "This is especially true where the perpetrator is one with authority or custodial control over the victim." *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citation omitted). Notably, "in a case such as this, where some evidence favored a prompt complaint instruction and some did not, it fell within the trial court's discretion to deny this instruction." *Commonwealth v. Williams*, 274 A.3d 722, 737 (Pa. Super. 2022). *See also Commonwealth v. Quiles*, (non-precedential decision) 346 A.3d 330 at *5 (Pa. Super. filed August 4, 2025).

Appellant argues that although the Pennsylvania Supreme Court's Suggested Standard Criminal Jury Instructions Subcommittee voted to delete Instruction 4.13A in 2024, the instruction was still a suggested instruction at the time of the 2023 trial. He argues, "Regardless of the deletion of the instruction from the standard instruction, Mr. Dircio respectfully contends that instruction 4.13(a) is a proper instruction because it is consistent with section 3105 – prompt complaint. *See* 18 Pa.C.S.A. § 3105 (providing that a defendant is not prohibited from offering evidence of a complainant's failure to promptly report the crime)." Brief of Appellant at 48.

The Commonwealth responds that decisional law recognizes a trial court is not required to give every jury instruction requested by counsel, and "its

- 19 -

refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." ***Thomas***, 904 A.2d at 970. It notes that the prompt complaint instruction presumes that a sexual assault victim would report the assault at the very first opportunity. ***See Commonwealth v. Snoke***, 580 A.2d 295, 297 (Pa. 1990) (recognizing a complaint made promptly is more credible given the lack of time to fabricate a story, while, conversely, one made after substantial delay without reasonable explanation may place the complainant's credibility in question). Yet, it also cites authority recognizing exceptions to this presumption, as noted in ***Sandusky***, ***supra***., and other decisions, that a minor sexual assault victim may not appreciate the offensive nature of the conduct, such that the lack of a prompt complaint would not necessarily justify an inference of fabrication.

The Commonwealth emphasizes, further, this Court's recognition in ***Thomas*** that a young victim of a custodial adult's sexual abuse also may not understand the inappropriateness of the acts committed. ***Id.*** at 970. Likewise, the Pennsylvania Supreme Court in ***Snoke*** held that the trial court in that case properly declined to give a prompt complaint instruction where the five-year-old victim of her father's sexual abuse delayed five months before reporting it, and only did so after watching a film on good touching and bad touching shown in her elementary school. "When no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrong-doing particularly where the person involved is in a position of confidence. ***Snoke***, 580 A.2d at 303. As such, the

high court held the trial court properly refused to instruct the jury on the lack prompt complaint under the facts of that case. *Id*.

Like the facts of *Snoke*, the facts in the case *sub judice* involve a very young child who was subjected to sexual abuse between the ages of 7 and 10 at the hands of a custodial adult, Appellant, with whom she was frequently alone in the family home while her mother was elsewhere. N.T., 4/11/23, 91, 94-96, 134. During the times of abuse, Appellant would not use physical force or cause physical injury beyond the sexual abuse, N.T. at 226, but would, instead, secure D.A.'s silence by threatening to have her biological father harmed in his home country of Honduras. D.A. viewed her mother as being loyal to Appellant and felt she could not report her abuse to mother. N.T. at 90, 139. Only when D.A. refused to go to work with Appellant, and her older sister, who lives alone, took D.A. to her house and asked why she did not want to stay with Appellant, did D.A. break down, cry, and report Appellant's abuse of her to her sister. N.T. at 138.

Because such facts align with caselaw recognizing exceptions to the prompt complaint instruction where a juvenile victim is not subjected to overt physical harm, we find no reversible error with the trial court's ruling against reciting the prompt complaint jury instruction.

In Appellant's final issue, he challenges the discretionary aspects of his sentence. Specifically, he argues that the trial court committed an abuse of discretion by sentencing him to a guideline range, aggregate sentence of 25 to 50 years' incarceration, slightly less than the 26 to 52 year sentence

recommended by the Commonwealth, without considering his rehabilitative needs as required under 42 Pa.C.S.A. § 9721(b) and focusing, instead, solely on the victim impact of his crimes. In this respect, his argument agrees with his Section 2119(f) Concise Statement, in which he maintains that he presents a substantial question by claiming the trial court failed to consider his rehabilitative needs and his capacity for rehabilitation.

We have stated:

With respect to our standard of review, [in cases challenging the discretionary aspects of sentencing[,] we have held that sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. Moreover, pursuant to statute, [an a]ppellant does not have an automatic right to appeal the discretionary aspects of his sentence. **See** 42 Pa.C.S.A. § 9781(b). Instead, [an a]ppellant must petition this Court for permission to appeal the discretionary aspects of his sentence. As this Court has explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [708(E)]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Cook**, 941 A.2d 7, 11 (Pa. Super. 2007).

**Commonwealth v. Laughman**, 314 A.3d 569, 571 (Pa. Super. 2024).

Here, Appellant filed a timely notice of appeal and preserved the discretionary aspects of sentencing claim in his post-sentence motion.

Further, he has filed a statement pursuant to Rule 2119(f) within his appellate brief as required. *See* Appellant's Brief at 25; *see also Commonwealth's Brief* at 57 ("Defendant alleges that the trial court did not consider the sentencing factors as set forth in 9721(b) and this raises a substantial question.").

A substantial question is determined on a case-by-case basis and exists "only when the appellant advances a colorable argument that the sentencing judge's actions were wither: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms with underly the sentencing process." *Commonwealth v. McCain*, 176 A.3d 236, 240 (Pa. Super. 2017). A claim that the trial court imposed an excessive sentence without properly considering mitigating factors and his rehabilitative needs raises a substantial question. *See Commonwealth v. Khamisi,* No. 1270 EDA 2025, 2026 WL 937339, at *6 (Pa. Super. filed Apr. 7, 2026) (citing *Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super 2015) (finding that a failure to consider rehabilitative needs or mitigating factors raises a substantial question when a party claims a sentence is excessive).

If the trial court was informed by a presentence investigation report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Miller*, 275 A.3d 530, 535 (Pa. Super. 2022); *see also Commonwealth v. Rhoades*, 8 A.3d 912, 919 (Pa. Super. 2010) (noting that where "the sentencing court had the benefit of a

pre[ ]sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors") (citation and quotation marks omitted).  Here, the trial court stated that it had received the presentence investigation ("PSI") report, the Commonwealth's memorandum, and the defense sentencing memorandum.  N.T., 8/23/23/, at 3.

Appellant argues that while the trial court referenced his rehabilitative needs, it stated his prospects for rehabilitation were "abysmal" because he "showed a complete, horrifying, lack of remorse for his actions."  *See* Rule 1925(a) Opinion at 13.  It opined at sentencing, moreover, that the impact on D.A. would be immeasurable and that it was "saddened by that[,]" which, Appellant suggests, reflects excessive emphasis on victim impact to the exclusion of its necessary consideration of other sentencing factors.

The trial court opines that it considered all relevant factors, including the information in the presentence report as well as the protection of the public, the gravity of the offense, and the rehabilitative needs of Appellant.  At the sentencing hearing, Appellant presented mitigating evidence such as his employment record of having worked full-time as a dependable mechanic whose employer held him in high esteem for his exemplary work, and that Appellant used the money to support his family.  N.T. 8/23/23 (Sentencing Hearing), at 23-24.  The trial court acknowledged that it admitted this mitigation evidence but also noted for the record that it considered Appellant's

lack of remorse in conjunction with expert opinion that he was likely to reoffend. With that, it entered its guideline range, aggregate sentence.

On this record, we reject Appellant's challenge to the discretionary aspects of his sentence and its more specific charge that the trial court failed to consider his rehabilitative needs. The trial court indicated, to the contrary, that it was informed by the PSI and otherwise demonstrated its attention to Appellant's rehabilitative needs as well as to his amenability to rehabilitation. Therefore, we discern no merit to Appellant's sentencing claim.

For the foregoing reasons, we affirm judgment of sentence.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date:  6/26/2026